# EXHIBIT 4



## Planet **Depos**®
We Make It Happen™

# Transcript of Rodrigo Ramos

**Date:** March 22, 2017
**Case:** Bolton -v- The Sheriff of Cook County, et al.

**Planet Depos**
**Phone:** 888-433-3767
**Fax:** 888-503-3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING | INTERPRETATION | TRIAL SERVICES

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

---

**Page 1**

```
 1        UNITED STATES DISTRICT COURT
 2        NORTHERN DISTRICT OF ILLINOIS
 3             EASTERN DIVISION
 4  --------------------------x
 5  LITROY BOLTON,              :
 6                Plaintiff,    :
 7        v.                    :
 8  THE SHERIFF OF COOK         :
 9  COUNTY, individually and    :
10  in his official capacity;   :
11  COOK COUNTY; DR. NNEKA      :
12  JONES TAPIA;      : Case No. 16 CV 5012
13  (Caption continued on next page)
14
15        Deposition of RODRIGO RAMOS
16              Chicago, Illinois
17         Wednesday, March 22, 2017
18                 2:03 p.m.
19
20
21
22  Job No.: 139309
23  Pages: 1 - 84
24  Reported by: Tiffany M. Pietrzyk, CSR RPR
```

---

**Page 2**

```
 1  (Caption continued from previous page)
 2  DR. NNEKA JONES TAPIA,        :
 3  individually and in her       :
 4  official capacity as          :
 5  Executive Director of the     :
 6  Cook County Department of     :
 7  Corrections; JAMES CIUKAJ;    :
 8  Correctional Officers         :
 9  MIGUEL ORTIZ, RODRIGO         :
10  RAMOS, CODY LETTIERE,         :
11  CHRISTOPHER IVORY and         :
12  UNKNOWN EMPLOYEES OF COOK     :
13  COUNTY JAIL; Internal         :
14  Affairs Investigator         :
15  JUAN F. DIAZ; Internal        :
16  Affairs Investigator         :
17  ESTHER MONTANEZ; UNKNOWN      :
18  EMPLOYEES OF COOK COUNTY;     :
19  UNKNOWN EMPLOYEES OF THE      :
20  OFFICE OF PROFESSIONAL        :
21  REVIEW OF THE COOK COUNTY     :
22  SHERIFF'S OFFICE;             :
23        Defendants.    :
24  --------------------------  x
```

---

**Page 3**

```
 1      Deposition of RODRIGO RAMOS, held at the
 2  location of:
 3
 4        LOEVY & LOEVY
 5        311 North Aberdeen, 3rd Floor
 6        Chicago, Illinois 60607
 7        (312) 243-5900
 8
 9
10
11
12
13      Pursuant to notice before Tiffany M. Pietrzyk, a
14  Certified Shorthand Reporter, Registered
15  Professional Reporter, and a Notary Public in and
16  for the State of Illinois.
17
18
19
20
21
22
23
24
```

---

**Page 4**

```
 1            A P P E A R A N C E S
 2
 3  ON BEHALF OF THE PLAINTIFF:
 4        VINCENZO FIELD, ESQUIRE
 5        LOEVY & LOEVY
 6        311 North Aberdeen Street
 7        3rd Floor
 8        Chicago, Illinois 60607
 9        (312) 243-5900
10
11  ON BEHALF OF THE DEFENDANTS:
12        MEGAN MCGRATH, ESQUIRE
13        COOK COUNTY STATE'S ATTORNEY'S OFFICE
14        500 Daley Center
15        50 West Washington Street
16        Chicago, Illinois 60602
17        (312) 603-5967
18
19
20
21
22
23
24
```

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

2 (5 to 8)

---

**5**

A P P E A R A N C E S   C O N T I N U E D

ON BEHALF OF THE DEFENDANTS:
JOHN C. COYNE, ESQUIRE
LAW OFFICE OF JOHN C. COYNE
53 West Jackson Boulevard
Suite 1750
Chicago, Illinois  60604
(312) 583-9500

---

**6**

## CONTENTS

EXAMINATION OF RODRIGO RAMOS          PAGE
  Direct Examination          7
By Mr. Field
  Cross-Examination          78
By Mr. Coyne

        E X H I B I T S
        (Retained by counsel.)
EXHIBITS                    PAGE
Group Exhibit 1     Use-of-Force Form     54
Group Exhibit 2     General Order     57

---

**7**

1          P R O C E E D I N G S
2              (Witness sworn.)
3  WHEREUPON:
4              RODRIGO RAMOS,
5  called as a witness herein, having been first duly
6  sworn, was examined and testified as follows:
7          DIRECT EXAMINATION
8  BY MR. FIELD:
9      Q. Officer, could you please state and spell
10 your name for the record?
11     A. Yes.  Rodrigo Ramos, R-o-d-r-i-g-o; last
12 name is R-a-m-o-s.
13     Q. Thank you.  Officer Ramos, have you been
14 deposed before?
15     A. No.
16     Q. This is the first time?
17     A. Yes.
18     Q. So I'm going to go through the basic ground
19 rules so we can get through this as quickly as
20 possible.  I'll ask you that let me finish asking my
21 questions before you start answering, and I will
22 likewise let you finish answering before I ask
23 another question.  That way the court reporter can
24 get everything down.

---

**8**

1          In the same way, when you're answering a
2  question, if you could give an oral, verbal answer
3  rather than nodding your head or saying uh-huh, that
4  way again the court reporter gets your answers down.
5  It's easier to understand what someone is saying
6  when they use words rather than nodding their head.
7  It's impossible to get in a deposition.
8          I'm going to assume that you understand my
9  questions if you answer them; so please, if what I'm
10 asking isn't clear or, you know, it doesn't make
11 sense for some reason, just let me know.  I'm happy
12 to rephrase the question or try to explain to you
13 what it is that I'm asking.
14         And if you need a break at any time, just
15 let me know.  We can take a break.  I would just ask
16 you to answer any pending question before we take
17 that break.
18         Does all of that make sense to you?
19     A. Yes.
20     Q. Okay.  Did you review any documents in
21 preparation for your deposition today?
22     A. I did.
23     Q. What documents did you review?
24     A. My incident and use-of-force report.

Transcript of Rodrigo Ramos

Conducted on March 22, 2017

**9**

1    Q. You mean the report related to the incident
2  with Mr. Bolton; is that correct?
3    A. That's correct.
4    Q. Any other documents besides that document?
5    A. No.
6    Q. Did you review any policy documents?
7    A. No.
8    Q. What is your -- you're currently employed at
9  the Cook County Jail, correct?
10    A. Yes, I am.
11    Q. What is your current position at the jail?
12    A. Correction officer.
13    Q. How long have you been a correctional
14  officer at the jail?
15    A. Four years.
16    Q. And are you full-time?
17    A. Yes, I am.
18    Q. Have you been full-time for the full four
19  years?
20    A. Yes.
21    Q. Previous to starting as a corrections
22  officer at the jail, did you hold any other position
23  at Cook County Jail?
24    A. No.

**10**

1    Q. Have you worked at any other jail or prison?
2    A. No.
3    Q. Were you employed previous to starting at
4  the jail?
5    A. Yes.
6    Q. Where were you employed?
7    A. American Airlines.
8    Q. What was your position at American Airlines?
9    A. Ramp service.
10    Q. Say that again. Sorry.
11    A. Ramp service, fee service clerk.
12    Q. And how long did you do that job?
13    A. 16 years.
14    Q. 16 years. Okay. Was that full-time?
15    A. Yes.
16    Q. Any full-time employment previous to that?
17    A. No.
18    Q. Where did you go to high school?
19    A. Kelvyn Park.
20    Q. And you graduated from that high school?
21    A. Yes.
22    Q. What year was that?
23    A. '94.
24    Q. Did you do any college after high school?

**11**

1    A. I did.
2    Q. Where did you go to college?
3    A. UIC and Triton College.
4    Q. Did you say Trenton?
5    A. Triton College.
6    Q. Sorry. What years were you at UIC?
7    A. '94 to '95.
8    Q. And what about Triton College?
9    A. Just a semester.
10    Q. Just one semester. Do you recall what year
11  that was in?
12    A. '95.
13    Q. Any other colleges or anything like that
14  besides the two that you mentioned?
15    A. Moraine Valley, just for the academy.
16    Q. My understanding is that you can get college
17  credits through the academy; is that correct?
18    A. That is correct.
19    Q. And how many credits have you gained through
20  the academy?
21    A. 32.
22    Q. Any certificates of any kind whether or not
23  it's as part of a college degree?
24    A. No.

**12**

1    Q. What did you study when you were at UIC?
2  Anything in particular?
3    A. Architecture.
4    Q. What about at Triton College?
5    A. Just regular, basic classes. My general
6  courses.
7    Q. How many credits did you get at either of
8  those institutions, either UIC or Triton, if you can
9  remember?
10    A. I can't remember.
11    Q. In your employment as a corrections officer,
12  is there an annual training requirement?
13    A. Just our weekly in-service training where we
14  go out and recertify for our gun.
15    Q. That's weekly?
16    A. That's just one week out of the year.
17    Q. One week out of the year. Okay. So then
18  you recertify for your firearm.
19        Does it involve any other training?
20    A. One day of, like, a use-of-force review,
21  defensive tactics. That's pretty much it.
22    Q. And this occurs once a year; is that
23  correct?
24    A. Yes.

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

4 (13 to 16)

---

**13**

1 Q. Is it a whole week?
2 A. Yes, it is.
3 Q. How long is the component on
4 use-of-force review?
5 A. Couple of hours.
6 Q. And what does that training consist of?
7 A. Basically, going through a graph that we
8 have and showing us -- pretty much for the report
9 writing basically. It's, like, a chart we go
10 through, so knowing what steps we can take as far as
11 the writing report.
12 Q. So do you review the actual
13 use-of-force report itself during the training?
14 A. Examples of use of force.
15 Q. Okay. Examples of a form?
16 A. Yeah.
17 Q. What about beyond just how the form should
18 be filled out? What else does the training consist
19 of?
20 A. That's pretty of much it.
21 Q. Do you go over what level of force is
22 appropriate based on what the detainee or inmate
23 is -- what actions they're taking?
24 A. Yes.

**14**

1 Q. Does the Cook County Jail have a written
2 policy on use of force?
3 A. Yes, they do.
4 Q. Do you have to review that written policy as
5 part of the training?
6 A. I'm not sure, to be honest.
7 Q. Is there a requirement that you sign off in
8 any way on that training that you do once a year?
9 A. No.
10 Q. When was the last time that you did this
11 annual training?
12 A. Last year in June, June of 2015 -- 2016.
13 I'm sorry.
14 Q. So will you do the training again in June of
15 this year?
16 A. September of this year.
17 Q. Where is the training held?
18 A. On the compound, Building 2.
19 Q. So it's here in Chicago?
20 A. Yes.
21 Q. You mentioned that there was defensive
22 tactics training.
23 What does that consist of?
24 A. Handcuffing, knowing how to do -- in certain

**15**

1 situations, what steps to take when you have a --
2 either a fight or a hostile detainee.
3 Q. When you say what steps to take, you mean in
4 order to put handcuffs on the person?
5 A. Yeah, how to handcuff them or how to
6 initiate contact with the inmate.
7 Q. When you say how to initiate contact, can
8 you explain what you mean by that?
9 A. How to approach an inmate in a situation
10 depending what -- what the situation occurs. If
11 it's a fight, they'll show us how to handle a fight.
12 Or if we have an inmate that's refusing to handcuff
13 or enter his cell, they'll show us how to deal with
14 that situation.
15 Q. Okay. Fair to say that you're taught that
16 there are different ways to respond to different
17 threats; is that correct?
18 A. That is correct.
19 Q. Do you practice at this training the
20 different ways to respond based on the threat
21 presented?
22 A. Yes.
23 Q. You testified -- I think you said you've
24 been a corrections officer for four years; is that

**16**

1 correct?
2 A. That's correct.
3 Q. And in that four-year period, could you
4 estimate the number of times you've had to fill out
5 a use-of-force report?
6 A. Between 30 to 40 times.
7 Q. Is there a policy at the jail for when those
8 forms are supposed to be filled out?
9 A. There is.
10 Q. What is that policy?
11 A. Whenever there's a fight involved, whenever
12 you have take down an inmate, handcuff an inmate.
13 That's pretty much --
14 Q. And what about for when the officer is
15 supposed to fill it out? So I understand that
16 there's certain types of incidents that require a
17 use-of-force report.
18 Is there also a requirement for when, after
19 that incident, the form is supposed to be filled
20 out?
21 A. As a time frame?
22 Q. Yeah, exactly.
23 A. I believe you have 24 hours to fill one out.
24 Q. What is the purpose of the

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

17

1  use-of-force report?
2      MS. McGRATH: Objection. Form, foundation.
3      You can answer.
4      A. I'm sorry. She threw me off. Can you
5  repeat the question?
6      Q. Sure. Based on your understanding with your
7  four years of experience as a corrections officer,
8  what is your understanding of a use-of-force report?
9      A. To describe the situation, the incident that
10 occurred.
11     Q. And would you agree with me that it's
12 important that those forms be filled out accurately?
13     A. Yes.
14     Q. Would you agree with me that it would be a
15 violation of the jail's policies if you didn't fill
16 out that form accurately?
17     A. Yes.
18     Q. Would you agree with me that it's important
19 to completely fill out the form?
20     A. Yes.
21     Q. Would you agree with me that it's a
22 violation of the jail's policy not to completely
23 fill out the form?
24     A. That I wouldn't know.

18

1      Q. Have you ever been put -- well, are you
2  aware of a program at the jail, an
3  early-intervention program for use of force? Have
4  you heard of this program before?
5      A. I'm sorry.
6      Q. Just say it out loud.
7      A. No.
8      Q. So fair to say then you, yourself, as an
9  officer, have never been put in the
10 early-intervention use-of-force program?
11     A. No. I'm sorry. No, I've never been put
12 into the --
13     Q. Okay. In the four years that you've been a
14 corrections officer, how many
15 use-of-force complaints have you had lodged against
16 you, if any?
17     A. None.
18     Q. And you've never -- this is a logical
19 follow-up. I think I know the answer.
20     You've never received discipline for a
21 use-of-force incident in which you were the
22 individual complained of as applying that?
23     A. I have not.
24     Q. You said a minute ago that you thought the

19

1  practice or the policy was that you had 24 hours to
2  fill out a use-of-force report after the incident.
3  I want to know what your personal practice is.
4      You said you've maybe done 30 or 40 of them?
5      A. Yes.
6      Q. Do you have, kind of, a standard practice?
7      A. I try to get them done within 30 minutes of
8  the incident.
9      Q. So as soon after the incident as you
10 possibly can?
11     A. Yes.
12     Q. Have you ever been disciplined in any way
13 for not properly filling out a use-of-force report?
14     A. No.
15     Q. If the -- well, let me ask it this way: If
16 there's been an incident for which you have to fill
17 out a use-of-force report and the incident has been
18 captured on video, do you review the video before
19 filling out the report?
20     A. Yes.
21     Q. In the incident that's at issue in this
22 case, the January 17, 2014, incident with
23 Officer Ortiz and Mr. Bolton, are you aware that
24 that incident was captured on video?

20

1      A. I was.
2      Q. Did you review that video previous to you
3  filling out your use-of-force report?
4      A. I did not.
5      Q. Why, in this instance, did you not review
6  the video?
7      A. I was fully aware of the situation that
8  occurred. I didn't see a need to see the video.
9      Q. But if you had wanted to see the video
10 before filling out your use-of-force report, would
11 you have been able to do that?
12     A. Yes.
13     Q. In the 30 or 40 use-of-force reports that
14 you testified earlier that you filled out, how many
15 times would you say you reviewed video previous to
16 filling out the form?
17     A. About 80 percent of the time.
18     Q. Can you explain what the process is, like,
19 where would you have to go to be able to view the
20 video, that kind of thing? Who would you make the
21 request of?
22     A. The lieutenant or sergeant would show me the
23 video.
24     Q. And would that be at your request, or is it

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

6 (21 to 24)

**21**

1 the lieutenant or sergeant that decides to show the
2 video?
3    A. At my request.
4    Q. In the instances in which you reviewed a
5 video previous to filling out your
6 use-of-force report, did you review that video with
7 other officers who were involved in the incident?
8    A. Yes.
9    Q. And in those instances where you did review
10 the video, did you fill out your use-of-force report
11 right after reviewing the video?
12    A. Yes.
13    Q. And did you fill that out -- again, in the
14 instances in which you watched the video and then
15 filled out your use-of-force report after watching
16 it, did you fill out your use-of-force report with
17 the other officers involved in the incident as well?
18 Were they filling out their reports at the same time
19 is what I'm asking.
20    A. If we're next to each other, are you asking
21 this, or is it --
22    Q. Yeah. Are you in the -- I'm guessing you go
23 somewhere to watch the video.
24    A. Uh-huh.

**22**

1    Q. Is there a special room that you would do
2 that in?
3    A. Yeah, the watch commander's office.
4    Q. Okay. And then would you fill out your
5 use-of-force report in the watch commander's office
6 with the other officers in that same office?
7    A. No, we wouldn't be able to do that.
8    Q. Why not?
9    A. Because we're using computers to fill out
10 our reports.
11    Q. So currently it's on computer?
12    A. Currently it's on computers that we fill out
13 the reports.
14    Q. Was there a period of time in which you had
15 to fill out the reports by hand?
16    A. Yes.
17    Q. And for the January 17, 2014, incident at
18 issue in this case, you filled out a
19 use-of-force report, correct?
20    A. That's correct.
21    Q. And you filled that one out by hand?
22    A. Yes.
23    Q. So of those cases in which you've had to
24 fill out a use-of-force report and you did so after

**23**

1 reviewing the video, were there any instances that
2 involved filling out use-of-force reports by hand?
3    A. Yes.
4    Q. Okay. And in those instances, would you
5 fill those forms out in the watch commander's
6 office?
7    A. No. Wherever we found the space to write
8 them.
9    Q. Okay. And would you be writing those
10 use-of-force reports with other officers or just
11 wherever you could find a space?
12    A. Wherever you could find a space.
13    Q. Would you consult with the other officers in
14 filling out the form?
15    A. If I had a question about filling it out.
16    Q. Okay. Not about the incident?
17    A. Not about the incident.
18    Q. In the 30 to 40 times you've had to fill out
19 a use-of-force report, is there an attempt to make
20 sure that all of the officers' reports are similar
21 to each other?
22    MS. McGRATH: Objection. Form, foundation.
23    A. No.
24    Q. For example, the form contains a number of

**24**

1 check boxes; is that correct?
2    A. That's correct.
3    Q. When you were filling it out by hand?
4    A. Yes.
5    Q. Does the computerized version also have
6 checked boxes, or what does --
7    A. It does.
8    Q. When you were filling them out by hand, in
9 any of the times that you've had to fill out a
10 use-of-force report, was there ever any attempt to
11 make sure you and the other officers filled out the
12 same boxes?
13    A. I would say no.
14    Q. Well, have you ever asked another officer
15 while you were filling out the form what boxes they
16 were checking off?
17    A. I would have never asked anybody what boxes
18 they're filling out, no. I wouldn't.
19    Q. Has any other officer ever asked you what
20 boxes you were filling out?
21    A. If they have a doubt on what they're filling
22 out, they probably would.
23    Q. But as you sit here today, can you remember
24 any officer asking you what boxes you were checking

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

7 (25 to 28)

---

**25**

1  off on the use-of-force report?
2      A. I have.
3      Q. You can remember instances?
4      A. Yes.
5      Q. What about in the -- well, strike that.
6      We'll come back to that in a minute.
7      As you sit here today, are you aware of any
8  policy at the jail that requires officers to fill
9  out use-of-force reports separate from each other?
10     A. No.
11     Q. Have you ever received any training that
12 required you or where it was indicated that you were
13 required to fill out a use-of-force report separate
14 from the other officers involved in the incident?
15     A. No.
16     Q. Have you ever received any training that
17 required you not to speak to the other officers
18 involved in a use-of-force incident about the
19 incident itself after it occurred?
20     A. No.
21     Q. Are you aware of any policy at the jail that
22 requires officers involved in a
23 use-of-force incident not to speak to each other
24 about the use-of-force incident itself after the

---

**26**

1  incident has occurred?
2      MS. McGRATH: Objection. Form, asked and
3  answered.
4      A. No.
5      Q. For the January 17, 2014, incident that's at
6  issue here, do you know if any of the officers
7  involved reviewed the video previous to filling out
8  their use-of-force reports?
9      A. I do not know.
10     Q. And when you filled out your
11 use-of-force report in this case, do you recall
12 where you were?
13     A. Yes.
14     Q. Where were you?
15     A. In second floor west holding.
16     Q. Second floor, did you say west holding?
17     A. Yes.
18     Q. Is there an office there or something like
19 that?
20     A. Yes.
21     Q. And when you filled out your report, were
22 you the only officer involved in the incident who
23 was in that room, or were there other officers
24 involved who were also there?

---

**27**

1      A. All three of us were in there.
2      Q. And were all three of you filling out the
3  report at the same time?
4      A. Ivory and myself were. I don't recall
5  Officer Ortiz writing the report at the same time.
6      Q. Officer Ivory and yourself were writing the
7  report at the same time?
8      A. Yes.
9      Q. Was Officer Ortiz in the room?
10     A. I believe so, yes.
11     Q. But you're not sure if he was filling out a
12 report or not; is that correct?
13     A. That is correct.
14     Q. You testified a minute ago that you can
15 recall instances in which an officer has asked you
16 what boxes you were checking off on the form.
17     In relation to this incident, do you recall
18 if Officer Ivory asked you what boxes you were
19 checking off on the form?
20     A. I do not recall.
21     Q. So it's possible, but as you sit here today,
22 you do not remember?
23     A. I do not remember.
24     Q. When you were in the office on the second

---

**28**

1  floor west holding filling out your report, was
2  there anyone else in the office with you besides
3  Officer Ivory and Officer Ortiz?
4      A. No.
5      Q. I want to ask you some questions about the
6  January 17, 2014, incident.
7      Where were you located within the jail when
8  the incident occurred?
9      A. I was outside the Tier 2-A.
10     Q. Outside Tier 2-A?
11     A. Yes.
12     Q. And you were assigned to -- where were you
13 assigned that day?
14     A. My assignment was that tier.
15     Q. And outside Tier 2-A, is that where you were
16 when Mr. Bolton first arrived at the tier?
17     A. Yes. I had stepped out to accept him.
18     Q. Stepped out to accept?
19     A. The inmate.
20     Q. He was being transported over there by
21 another officer?
22     A. Yes.
23     Q. Who was that officer?
24     A. Officer Ivory.

---

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

29

1    Q. Can you -- it doesn't have to be specific to
2  this incident, but can you walk me through how that
3  transportation process works?  I know you said you
4  came out the tier to accept him.  Officer Ivory was
5  transporting him.
6        So how does that process work?  Is there
7  documentation that gets handed over?  Do you know
8  they're on their way previous to them arriving, that
9  kind of thing?
10    A. Officer Ivory called me over the radio that
11  he was approaching with a one-time detainee.  The
12  only document that I receive is his ID.
13    Q. The inmate?
14    A. The inmate's ID.
15    Q. And how is it determined what cell the
16  detainee will be placed in?
17        MS. McGRATH: Objection.  Form, foundation.
18    A. Classification assigns them.
19    Q. And how are you made aware of what cell they
20  are supposed to be put in?
21    A. It's either marked on his ID or I'm told by
22  the officer that's bringing him.
23    Q. Well, in the January 17, 2014, incident, how
24  were you first made aware of what cell Mr. Bolton

30

1  was supposed to be put in?
2    A. I don't recall.
3    Q. I know you testified that one of the ways
4  you can be made aware is if the transporting officer
5  informs you where they're supposed to be placed; is
6  that correct?
7    A. Yes.
8    Q. Another way you can be made aware is if the
9  cell assignment is on the detainee's ID; is that
10  correct?
11    A. Yes.
12    Q. Is there any other way that you can be made
13  aware of what cell the detainee is supposed to be
14  placed in?
15    A. Sure.  I could check the computer system.
16    Q. And anything else beyond those three things?
17    A. Classification can call me and tell me.
18    Q. Anything else?
19    A. That's it.
20    Q. As you sit here today, of those four ways
21  that you can be made aware of what cell a detainee
22  is supposed to be placed in, as you sit here today,
23  you do not recall which of those four ways you were
24  informed what cell Mr. Bolton is to be placed in;

31

1  is that correct?
2    A. That's correct.
3    Q. Do you recall what cell Mr. Bolton was to be
4  placed in?
5    A. Not at this time.
6    Q. When Officer Ivory arrived at the tier with
7  Inmate Bolton, can you -- do you have any memory --
8  independent memory as you sit here today of what
9  occurred after Officer Ivory brought the inmate to
10  the tier?
11    A. I do.
12    Q. Can you go through that with me?
13    A. Officer Ivory brought me the inmate and told
14  me that he was to enter a cell.  I don't remember
15  exactly what number the cell was.  But he told me --
16  I told him that I couldn't place Detainee Bolton
17  into the cell because that cell was used prior to
18  house an inmate that was placed under quarantine.
19    Q. Okay.  Then what happened?
20    A. We had a minor discussion.  The inmate was
21  stating that he didn't want to enter the tier, that
22  he wanted to speak to a white shirt, which is a
23  sergeant; so then I just told the inmate to relax,
24  just to stand right there.  I stepped in to make a

32

1  phone call to call classification just to verify
2  that he was able to enter that tier or that cell,
3  and it was a verified that he was able to enter that
4  cell.
5    Q. Then what happened?
6    A. After that I stepped out to let everybody
7  know that he was able to enter the cell, at which
8  time the inmate was refusing to enter.  He wanted to
9  speak to a sergeant.
10    Q. A minute ago you said that when you informed
11  Officer Ivory that you couldn't place the inmate in
12  that cell because it had been under quarantine, you
13  mentioned that you had a minor discussion.
14        Was that a minor discussion with Mr. Bolton
15  or with Officer Ivory?
16    A. Officer Ivory.
17    Q. Okay.  You said that you stepped into the
18  office to call classification?
19    A. I stepped back into my dorm, my tier.
20    Q. Okay.  Into the tier?
21    A. To make a phone call.
22    Q. And you called, you said, classification,
23  correct?
24    A. Yeah.

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

33

1  Q. Do you recall who you spoke to in
2  classification?
3  A. I do not.
4  Q. And would your call to classification be
5  recorded anywhere?
6  MS. McGRATH: Objection. Form, foundation.
7  A. I have no idea.
8  Q. Is there a log of phone calls? For example,
9  is that something you have to put on a log that you
10 made this call?
11 A. No.
12 Q. How long did the call with classification
13 last?
14 A. I have no idea. I don't remember.
15 Q. And you said you made this call from inside
16 your tier, correct?
17 A. Yes.
18 Q. Have you reviewed video of this incident?
19 A. I have.
20 Q. And when did you review the video?
21 A. The next day.
22 Q. And that was after you had already filled
23 out the use-of-force report?
24 A. Yes.

34

1  Q. And why did you review the video the next
2  day?
3  A. I was called to the office by my
4  superintendent to come see the video.
5  Q. Okay. And who was the superintendent?
6  A. Joseph Brown.
7  Q. And did you review the video with any other
8  officer at that time?
9  A. No.
10 Q. And was the superintendent in the room when
11 you reviewed the video?
12 A. Yes.
13 Q. And was it in the superintendent's office
14 that you reviewed it?
15 A. Yes.
16 Q. And did the superintendent ask you any
17 questions prior to reviewing the video?
18 A. No.
19 Q. Did he make any comment to you about the
20 incident whatsoever prior to reviewing the video?
21 A. No.
22 Q. Did he tell you why he wanted you to review
23 the video?
24 A. Just to go over the video and explain the

35

1  situation of the video, how he viewed the video.
2  Q. And so you reviewed the video with the
3  superintendent, correct?
4  A. Yes.
5  Q. And while you were reviewing the video, did
6  you make any comment to the superintendent?
7  A. No.
8  Q. Did he ask you any questions?
9  A. I don't recall.
10 Q. Do you recall if he made any statements to
11 you in relation to the incident whatsoever during
12 your review of the video?
13 A. The statement was basically he was just
14 going through the video and what his opinion was of
15 what he saw.
16 Q. And as you sit here today, do you recall
17 what he told you his opinion of the video was?
18 A. No.
19 Q. Do you recall if it differed from your own
20 opinion of what occurred during that incident?
21 A. No.
22 Q. Did the superintendent ask you to change
23 your use-of-force report?
24 A. No.

36

1  Q. Did he ask you to change the details of
2  what -- of your version of the incident in any
3  way --
4  A. No.
5  Q. -- whether it was on the form or not?
6  A. No.
7  Q. Did he ask you any questions after you
8  reviewed the video?
9  A. I don't recall.
10 Q. Do you recall him making any statements to
11 you of any kind in relation to the incident after
12 you viewed the video?
13 A. I don't remember.
14 Q. After you reviewed the video with the
15 superintendent, do you have a recollection of any
16 conversation with the superintendent in relation to
17 that video?
18 A. I did have a conversation.
19 Q. And what did that conversation consist of?
20 A. To be honest, I really don't remember the
21 conversation.
22 Q. And that was that same day?
23 A. Yes.
24 Q. Have you discussed the video with the

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

---

37

1 superintendent at any point after that day?

2     A. No.

3     Q. What about with anybody -- well, let me ask

4 you this first: Have you reviewed the video again

5 at any point since the time you reviewed it with the

6 superintendent?

7     A. No.

8     Q. Have you discussed the video with anyone

9 since that day that you reviewed it with the

10 superintendent?

11     A. Yes.

12     Q. Who did you discuss the video with?

13     A. My commander.

14     Q. Who is your commander?

15     A. Dominguez, Commander Dominguez.

16     Q. Anyone else?

17     A. That's it.

18     Q. When did you discuss the video with

19 Commander Dominguez?

20     A. I don't recall the exact date or time frame.

21     Q. Well, was it shortly after the incident

22 itself or --

23     A. Yes.

24     Q. Do you recall the conversation that you had

---

38

1 with Commander Dominguez about the video?

2     A. I don't recall the conversation.

3     Q. Do you recall any of the details of that

4 conversation whatsoever?

5     A. Yeah. We just talked about the incident

6 itself and the -- what was seen on the video and the

7 incident itself.

8     Q. Okay. Did you bring up the issue, or did

9 Commander Dominguez bring it up?

10     A. Commander Dominguez.

11     Q. And what did Commander Dominguez want to

12 know about the video?

13     A. He -- I basically -- he basically wanted to

14 know what occurred in the situation, what occurred.

15     Q. And what did you tell Commander Dominguez?

16     A. Exactly what was on my report that I stated

17 earlier to you.

18     Q. Which was?

19     A. That the inmate was refusing housing and

20 that another officer got involved, which was

21 Officer Ortiz -- got involved, and the inmate was

22 taken down to the ground.

23     Q. Did you indicate to Commander Dominguez that

24 Officer Ortiz punched Mr. Bolton?

---

39

1     A. I didn't tell him.

2     Q. Did you -- beyond telling

3 Commander Dominguez that Mr. Bolton had been taken

4 to the ground by Officer Ortiz, did you provide any

5 other details about Officer Ortiz's actions towards

6 Mr. Bolton?

7     A. No.

8     Q. Did Commander Dominguez ask you about

9 whether or not Officer Ortiz had struck Mr. Bolton?

10     A. No, because he seen it on the video.

11     Q. During the incident itself, did you witness

12 Officer Ortiz strike Mr. Bolton?

13     A. I did.

14     Q. We got off track a little bit. I want to go

15 back to you started to describe the incident itself.

16 We got to the point where you went back into the

17 tier, made a phone call to classification.

18     I believe your testimony was that you

19 confirmed that the inmate could be placed in that

20 cell; is that correct?

21     A. Yes.

22     Q. And then you came back out of the tier; is

23 that right?

24     A. That's correct.

---

40

1     Q. And who did you inform that the inmate or

2 that Mr. Bolton could be placed in that cell?

3     A. The inmate, Ivory, and Ortiz. We were all

4 present outside the tier.

5     Q. And did Officer Ivory say anything to you at

6 that point when you said that the classification had

7 confirmed that you could put the inmate in that

8 cell?

9     A. I don't remember.

10     Q. What about Officer Ortiz? Did he say

11 anything?

12     A. I believe he told the inmate that he

13 couldn't refuse because the inmate was continuing to

14 refuse. He was asking to speak to a sergeant --

15     Q. Okay.

16     A. -- at that point.

17     Q. Mr. Bolton was asking to speak to a

18 sergeant?

19     A. Yes.

20     Q. And Officer Ortiz told him that he could not

21 refuse to go into the cell; is that correct?

22     A. I believe -- I don't recall the words. I

23 don't recall the statement that was being --

24     Q. But in some way he told him that he was

---

Transcript of Rodrigo Ramos

Conducted on March 22, 2017

41

1  going to be put in that cell?
2      A. I don't recall.
3      Q. Well, I think you indicated a minute ago
4  that Officer Ortiz said something about the inmate
5  having to go into that cell, so I just -- I'm just
6  trying to figure out what exactly it is that you
7  remember.
8      A. I don't remember the exact words, but I
9  believe he was told he couldn't refuse housing.
10     Q. And that was from Officer Ortiz?
11     A. Yes.
12     Q. As part of your assignment that day, was it
13 your responsibility to put Mr. Bolton in the cell
14 that he was assigned to?
15     A. Yes.
16     Q. It wasn't Officer Ortiz's assignment; is
17 that correct?
18     A. That is correct.
19     Q. When Mr. Bolton asked to speak to a
20 sergeant, whose responsibility was it at that point
21 to determine whether or not a sergeant should be
22 contacted?
23     A. That would be my responsibility.
24     Q. And at any point before the incident itself

42

1  where Officer Ortiz took Mr. Bolton to the ground,
2  had you made a decision one way or the other about
3  contacting a sergeant?
4      A. Yes.
5      Q. What decision had you made?
6      A. I was going to call the sergeant.
7      Q. Fair to say then that Officer Ortiz acted
8  before you had an opportunity to call the sergeant?
9      A. Yes.
10     Q. Fair to say that if left to you, you would
11 have attempted to call the sergeant rather than
12 attempting to take Mr. Bolton to the ground; is that
13 correct?
14     MR. COYNE: Objection. Foundation,
15 speculation.
16     MS. McGRATH: Joined.
17     A. Can you ask that again?
18     Q. Fair to say that if it was left up to you to
19 handle the situation on your own, that you would
20 have called the sergeant rather than attempting to
21 take Mr. Bolton to the ground based on the situation
22 presented to you?
23     MR. COYNE: Same objection.
24     A. Sure, yes.

43

1      Q. And, in fact, that's what you planned to do,
2  to call the sergeant; is that correct?
3      A. I'm assuming at the time, yes.
4      Q. When you say you're assuming at the time,
5  what do you mean by that?
6      A. The way the incident played out, yes, I
7  would have called the sergeant.
8      Q. And had you been given the opportunity to do
9  so without any other officer acting, you would have
10 done so; is that fair to say?
11     MR. COYNE: Same objection.
12     MS. McGRATH: Joined.
13     A. That's fair to say, yes.
14     Q. After you came out of the tier to indicate
15 that classification had cleared the cell, did you
16 say anything to Mr. Bolton beyond what you've
17 already testified to?
18     A. No.
19     Q. Did Mr. Bolton say anything to you beyond
20 what you've already testified to about asking for a
21 sergeant?
22     A. No.
23     Q. Did Officer Ortiz -- again, this is after
24 you've come out of the tier to indicate that

44

1  classification had cleared the cell.
2      Did Officer Ortiz -- beyond what you've
3  already testified to, do you recall if Officer Ortiz
4  said anything else to Mr. Bolton?
5      A. I don't recall.
6      Q. Do you recall Mr. Bolton saying anything
7  else, beyond what you've already testified to, to
8  Officer Ortiz?
9      A. They had a discussion but I just don't
10 recall the exact words of the conversation that they
11 had.
12     Q. So you recall there being a conversation;
13 but as you sit here today, you don't recall the
14 content of that conversation; is that correct?
15     A. That's correct.
16     Q. Do you recall if Officer Ivory had said
17 anything to Mr. Bolton again after you came out of
18 the tier and cleared the cell?
19     A. I believe he did not.
20     Q. And do you recall if Mr. Bolton said
21 anything to Officer Ivory at that point?
22     A. I have no -- I don't remember.
23     Q. So I've gotten to the point where you've
24 come out of the cell. You indicated to everyone

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

12 (45 to 48)

**45**

1 that the cell was clear and Mr. Bolton has indicated
2 that he still wants a sergeant called and he does
3 not want to go into that cell.
4     Can you describe to me, based on your memory
5 as you sit here today, what happened next?
6     A. I'm sorry. Yes. Ortiz went to grab
7 Inmate Bolton by the elbow to secure him, and Bolton
8 went and threw himself on the floor. That's when
9 Ortiz went on top of Bolton. Ivory went to secure
10 his legs. I walked around to assist in securing the
11 inmate.
12     Q. When Mr. Bolton went to the floor, was he on
13 his back or his stomach?
14     A. His stomach.
15     Q. When Mr. Bolton went to the floor, did he
16 put his arms behind his back?
17     A. No, he did not.
18     Q. Well, when you went to handcuff Mr. Bolton,
19 did you have to struggle with him to handcuff him?
20     A. We did.
21     Q. So you said you viewed the video; is that
22 correct?
23     A. Yes.
24     Q. So your testimony as you sit here today is

**46**

1 that video will show you struggling with Mr. Bolton
2 to handcuff him; is that correct?
3     A. That's correct.
4     Q. But your testimony is that when Mr. Bolton
5 went to the ground, he was on his stomach, correct?
6     A. That's correct.
7     Q. I'm going to ask you a hypothetical. Take
8 Officer Ortiz out of the picture altogether.
9     Based on everything we've talked about up
10 until this point, if, before you had a chance to
11 call the sergeant, if Mr. Bolton had just thrown
12 himself to the ground on his stomach, would it have
13 been an appropriate use of force on your part to
14 handcuff Mr. Bolton after he threw himself on the
15 ground?
16     MR. COYNE: Objection. Form, foundation.
17     MS. McGRATH: Same objections. Calls for
18 speculation.
19     A. Yes.
20     Q. It would have, correct? The use-of-force
21 training you received as an officer would have
22 allowed you to do that, correct?
23     MR. COYNE: Same objection.
24     A. To handcuff him, yes.

**47**

1     Q. When Mr. Bolton was on the ground, did you
2 strike him in any way?
3     A. No.
4     Q. Did Officer Ivory -- based on what you
5 witnessed, did Officer Ivory strike Mr. Bolton in
6 any way?
7     A. No.
8     Q. When you were handcuffing Mr. Bolton, did
9 you feel like in any way that you needed to strike
10 him in order to handcuff him?
11     A. No.
12     Q. In fact, you were able to handcuff him
13 without striking him; isn't that correct?
14     A. That's correct.
15     Q. The only officer on the scene to strike
16 Mr. Bolton was Officer Ortiz; is that correct?
17     A. That is correct.
18     Q. And your testimony is that you witnessed
19 Officer Ortiz striking Mr. Bolton; is that correct?
20     A. Yes.
21     Q. How many times did you see Officer Ortiz hit
22 Mr. Bolton?
23     A. I don't recall how many times.
24     Q. Do you recall whether he hit him with a

**48**

1 closed or open fist?
2     A. I don't recall.
3     Q. And that's -- you've reviewed the video,
4 correct?
5     A. Yes.
6     Q. Even based on your review of the video, as
7 you sit here today, you don't recall; is that
8 correct?
9     A. I don't remember the video itself right now.
10     Q. When you were handcuffing Mr. Bolton, did
11 you say anything to him that you can remember?
12     A. Yeah. I asked him to give up his hands.
13     Q. Okay. Did he say anything to you?
14     A. No.
15     Q. Do you recall if Officer Ivory said anything
16 to Mr. Bolton while you were attempting to handcuff
17 him?
18     A. I don't recall.
19     Q. Do you recall -- during the period of time
20 that you were attempting to handcuff Mr. Bolton, do
21 you recall him saying anything at all during that
22 period?
23     A. No.
24     Q. Do you recall if Officer Ortiz said anything

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

13 (49 to 52)

49

1 to Mr. Bolton while you were attempting to handcuff
2 Mr. Bolton?
3     A. I don't recall.
4     Q. At a certain point after you -- well, let me
5 ask it this way: Did Mr. Bolton ever give up his
6 hands so that you could handcuff him?
7     MR. COYNE: Objection. Form.
8     A. Yes.
9     Q. Are you able to estimate how long after he
10 went to the ground he gave up his hands?
11    A. Estimate of time? I really don't know how
12 long it took.
13    Q. Would it be fair to say a few seconds?
14    A. Sure.
15    Q. Once you had the handcuffs on Mr. Bolton,
16 what happened next?
17    A. We sat him up, faced him against the wall,
18 and I called --
19    Q. Sorry. When you say we, who is we?
20    A. Ivory, myself, and Ortiz.
21    Q. All three of you?
22    A. Yes.
23    Q. Okay.
24    A. Sat him up, placed him against the wall.

50

1 And I believe I notified the sergeant over the
2 radio.
3     Q. Was the first time the sergeant was notified
4 of the incident when you made that radio call?
5     MS. McGRATH: Objection. Form, foundation.
6     Q. To your knowledge.
7     A. To my knowledge, yes.
8     Q. And your testimony is that you made that
9 radio call to the sergeant after -- immediately
10 after sitting up Mr. Bolton and placing him against
11 the wall; is that correct?
12    A. Yes.
13    Q. Was his back to the wall or facing the wall?
14    A. Back to the wall.
15    Q. When you sat up Mr. Bolton and placed him
16 against the wall, did you say anything to him?
17    A. No.
18    Q. Do you recall if Officer Ivory said anything
19 to him?
20    A. No.
21    Q. Do you recall if Officer Ortiz said anything
22 to him?
23    A. No.
24    Q. Did you say anything to Officer Ivory?

51

1     A. No.
2     Q. Did you say anything to Officer Ortiz?
3     A. No.
4     Q. Do you recall, during that period of time
5 between sitting him up and placing him against the
6 wall, whether Officer Ortiz said anything at all?
7     A. I do not recall.
8     Q. So it's possible that he did; you just don't
9 remember; is that correct?
10    A. I don't know. I didn't hear anything.
11    Q. Do you recall how long after you radioed the
12 sergeant the sergeant arrived on the scene?
13    A. Within seconds.
14    Q. When you say within seconds, are you able to
15 provide a -- is it 30 seconds, 60 seconds?
16    A. Under a minute.
17    Q. Under a minute. Okay.
18       When the sergeant arrived on the scene, did
19 you speak to the sergeant?
20    A. I did.
21    Q. And what did you say to the sergeant?
22    A. I explained to the sergeant the situation
23 that had just happened --
24    Q. Okay. Can you --

52

1     A. -- which is the statement that I gave you
2 prior. And I explained the whole situation about
3 the inmate refusing and we had to place him in
4 handcuffs, that he went to the ground.
5     Q. Okay. And did you indicate to the sergeant
6 at that point that Officer Ortiz had struck
7 Mr. Bolton in any way?
8     A. I don't recall.
9     Q. So it's possible that you didn't mention
10 that?
11    A. It's possible that I did mention it.
12    Q. I'm sorry. Did you say did?
13    A. Yes.
14    Q. You don't recall whether --
15    A. I don't recall, but I'm sure I did mention
16 something.
17    Q. About Officer Ortiz striking Mr. Bolton?
18    A. Yes.
19       MR. COYNE: Can we stick a name on the
20 sergeant?
21       THE WITNESS: Ciukaj.
22       MR. FIELD: He was deposed yesterday. I
23 didn't call him by his name once because I didn't
24 know how to pronounce it.

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

14 (53 to 56)

53

1    MR. COYNE: Easy for you to say.
2    MS. McGRATH: I know, right?
3 BY MR. FIELD:
4    Q. Do you recall Sergeant Ciukaj saying
5 anything to you after he arrived on the scene?
6    A. I don't remember the words.
7    Q. Okay. But he said something; you just don't
8 recall, correct?
9    A. Correct.
10    Q. What happened after the sergeant arrived on
11 the scene beyond you speaking with him, to the best
12 of your recollection?
13    A. I don't recall. I know the inmate was taken
14 down to receive medical attention, which is
15 protocol. And that's pretty much all I remember.
16    Q. Do you recall if at any time the sergeant
17 did a video-recorded interview with Mr. Bolton?
18    A. I wasn't present if he did.
19    Q. For how long were you present outside the
20 tier after the sergeant got there?
21    A. Two minutes.
22    Q. When you left, had Mr. Bolton already been
23 taken to medical?
24    A. I don't know.

54

1    Q. Once -- after the two minutes or however --
2 whatever amount of time you were there, did you go
3 back into Tier 2-A? Is that correct? Or where did
4 you go from there?
5    A. Yeah, I believe I went back to the tier.
6    Q. As you sit here today, you don't -- your
7 recollection is that Mr. Bolton was not interviewed
8 on camera while you were present on the scene; is
9 that correct?
10    A. That is correct.
11    Q. At any point after the incident itself, did
12 you have a conversation with Officer Ortiz about the
13 incident?
14    A. No.
15    (Group Exhibit 1 was marked for
16 identification and was retained by counsel.)
17    Q. I'm going to ask you to look at what's
18 marked as Group Exhibit 1 there. That's the top
19 one. Page numbers are at the bottom of the page
20 starting with 0001. I'm going to ask you to look at
21 page 20. It's actually 20 and 21. You can take
22 that clip off if you want.
23    This is the "Response to Resistance Use of
24 Force" form that you filled out in relation to the

55

1 incident with Mr. Bolton; is that correct?
2    A. That is correct.
3    Q. And your testimony earlier was that you
4 filled this out the day of the incident, correct?
5    A. That's correct.
6    Q. And that you did not review the video prior
7 to filling this out, correct?
8    A. That is correct.
9    Q. Your testimony earlier was that you didn't
10 review the video because you had witnessed the
11 incident such that you did not need to review the
12 video; is that correct?
13    A. That's correct.
14    Q. I'm going to ask you some questions about
15 the narrative portion on page 21.
16    Do you want a minute to review it?
17    A. No, that's fine.
18    Q. You do not indicate in the narrative that
19 the cell that you were going to put Mr. Bolton in
20 was -- that you initially believed it was under
21 quarantine; is that correct?
22    A. That is correct.
23    Q. Why didn't you put that in the narrative?
24    A. I don't know, to be honest.

56

1    Q. And you don't indicate in your narrative
2 that you checked with classification and that the
3 cell turned out to be cleared; is that correct?
4    A. That is correct.
5    Q. And why didn't you include that in the
6 narrative?
7    A. I have no idea, to be honest.
8    Q. You did not include in your narrative the
9 fact that Officer Ortiz struck Mr. Bolton; is that
10 correct?
11    A. That is correct.
12    Q. And why didn't you include that in your
13 narrative?
14    A. Because in my use-of-force report, I only
15 put what I did, what actions I took and what I did.
16 It's never about what somebody else did in the
17 report.
18    Q. Your testimony is that when you fill out a
19 use-of-force incident report, you're only to
20 describe the actions that you took and not what
21 actions were taken by other officers?
22    A. That is correct.
23    Q. And is it your understanding of the jail's
24 policy that that's how you're supposed to fill out

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

---

57

1  these forms?
2      A. That's how they used to be, yes.
3      Q. When you say how they used to be, what do
4  you mean?
5      A. When we first started -- they changed the
6  policy and the method of how we do reports. Before
7  they were done on paper, and it was always what
8  action you did or what actions you did. Now it's
9  based on what you see and what actions you took.
10     Q. So you're saying under the current policy,
11 you would have been required to put in your
12 narrative that Officer Ortiz had struck Mr. Bolton;
13 is that correct?
14     A. If I witnessed it, yes.
15     Q. But your understanding of the policy at the
16 time was that you did not have to include that?
17     A. Yes.
18     Q. I'm going to ask you to look at the second
19 packet there, Group exhibit No. 2.
20     (Group Exhibit 2 was marked for
21 identification and was retained by counsel.)
22     Q. It's on -- well, starting on page five of
23 that packet, that is a Sheriff's Office General
24 Order on reporting incidents, correct?

---

58

1      A. Yes.
2      Q. And this was issued on the 30th of
3  June 2011, correct?
4      A. That's what it states, yes.
5      Q. So it would have been -- this would have
6  been issued previous to the incident with
7  Mr. Bolton, correct?
8      A. Yes.
9      Q. If you can turn to page nine, do you see
10 letter F on page nine, general reporting guidelines?
11     A. Yes.
12     Q. Number two indicates that complete and
13 accurate documentation of events and incidents
14 within CC DOC facilities and other sites are
15 essential.
16     Do you see that?
17     A. Yes.
18     Q. Based on the language in the policy that
19 I've just cited to you, is it your testimony as you
20 sit here today that your use-of-force report, as it
21 pertains to the incident with Mr. Bolton, meets that
22 policy?
23     A. As far as what I did, yes.
24     Q. And your understanding of what I just read

---

59

1  to you from this policy in 2011, your understanding
2  is that it didn't require you to document everything
3  that you witnessed in terms of that incident?
4      A. I'm sorry. Can you repeat that?
5      Q. Sure. I'm trying to figure out what your
6  understanding of this 2011 policy was.
7      The language that I just read to you, is it
8  your understanding that this does not require you to
9  indicate in your use-of-force report everything that
10 you witnessed in relation to that use of force?
11     MR. COYNE: Objection. Form, as to
12 "everything."
13     MS. McGRATH: Same, and foundation.
14     A. I mean, I stated the events as I saw them.
15     Q. Okay. But you indicated --
16     A. Or I stated the events as what I did.
17     Q. Okay. And so is your understanding of this
18 policy as it's written here that you only have to
19 include the details of the event in terms of what
20 your own actions were?
21     A. That's how I read the report, yes.
22     Q. Read this policy?
23     A. Yes.
24     Q. Can I ask you to turn to page 204 of that

---

60

1  same packet? This is a Sheriff's Office Cook County
2  Sheriff's Order, Response to Resistance Use of
3  Force, duties, notifications, and reporting
4  procedures; is that correct?
5      A. That's correct.
6      Q. This indicates this document was issued in
7  May of 2011; is that correct?
8      A. That's correct.
9      Q. And that it was effective in September of
10 2011, correct?
11     A. Correct.
12     Q. Earlier in the deposition when I asked you
13 about your use-of-force training --
14     A. Uh-huh.
15     Q. -- is this the policy you were trained on at
16 those annual trainings?
17     A. It's part of it, yes.
18     Q. Can you turn to page 211 of that packet? At
19 the top of the page, the first full sentence reads,
20 All reports must, then it says letter A, be written
21 in specific terms in order to capture the details of
22 the incident; B, contain an accurate account of the
23 events leading to the use of force; C, include an
24 description of the instrument of restraint or

---

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

16 (61 to 64)

61

1 control, if any, and the manner in which it was
2 used; describe the nature and extent of the apparent
3 and reported injuries; letter F is describe in
4 detail the type and amount of force used, as well as
5 the precise actions taken in a particular incident.
6      Do you see that?
7      A. Yes.
8      Q. Based on what you see written here in this
9 policy, is it your testimony as you sit here today
10 that the use-of-force report that you filled out in
11 relation to the incident with Mr. Bolton is in line
12 with this policy or meets this policy?
13      MR. COYNE: Objection. Form, foundation.
14      MS. McGRATH: Joined.
15      A. Yes. It -- it -- I'm sorry.
16      Q. Go ahead.
17      A. It says describe in detail the type and
18 amount of force used, as well as precise actions
19 taken. My report states the exact actions that I
20 took in the report.
21      Q. That you, yourself, took; is that correct?
22      A. Yes.
23      Q. It also reads that it should be written in
24 specific terms in order to capture the details of

62

1 the incident.
2      Is it your understanding that your
3 use-of-force report accurately captures the details
4 of the incident that day?
5      A. Based on what I did, yes.
6      Q. Okay. But -- okay. Sure.
7      And is it your testimony as you sit here
8 today that your use-of-force report that you filled
9 out in relation to the Mr. Bolton incident contains
10 an accurate account of the events leading up to the
11 use of force?
12      A. Yes.
13      Q. Can you turn to page 135 of the first
14 packet? Not this one. Thank you. That's Group
15 Exhibit 1, just for the record.
16      MS. McGRATH: 135?
17      MR. FIELD: Yes, 135.
18      Q. Have you seen this document before?
19      A. Yes.
20      Q. When did you see this document?
21      A. Over a year ago. I don't recall the exact
22 date.
23      Q. And do you recall what the context was or
24 what the reason was for you being shown this

63

1 document at that time?
2      A. Yes. They were investigating the incident.
3      Q. Okay. And so who showed you this document?
4      A. OPR.
5      Q. And what did they ask you about the
6 document, if anything?
7      A. The document -- this document right here,
8 it's a statement that I made to OPR stating what
9 occurred on that day, the day of the incident, of
10 the initial incident.
11      Q. I just want to make sure that we're on the
12 same page.
13      So when you say you saw this over a year
14 ago, are you saying that's when you gave the
15 statement or when you saw the document as it's
16 written here?
17      A. This is the statement I gave to OPR.
18      Q. Okay. So my question is -- I'm sorry. I
19 probably didn't ask the question very well.
20      When you said you saw this document --
21      A. Oh, okay. I'm sorry.
22      Q. -- did you see the document with your
23 statement on it, or was that the time you gave the
24 statement?

64

1      A. This is the time I gave the statement right
2 here.
3      Q. After you gave the statement, were you shown
4 this description of your interview with OPR?
5      A. I don't recall.
6      Q. I just want to be clear.
7      A. Prior to today I had seen this report. I
8 don't recall exactly when I seen this report, but I
9 have seen this report.
10      Q. With the description --
11      A. Yes.
12      Q. -- as it is written here --
13      A. Yes.
14      Q. -- is that correct?
15      Do you recall why you were shown the report
16 as it's written here?
17      A. I don't recall.
18      Q. Do you recall who showed you the report?
19 Was it OPR?
20      A. I don't recall. I think I received a copy
21 of it. I don't recall who gave me a copy of it.
22 Any statement that we have, they always give us a
23 copy of it, so I don't know exactly who gave me the
24 copy of it.

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

17 (65 to 68)

---

65

1    Q. And when they gave you a copy, what is the
2  purpose of them giving you a copy?
3      MS. McGRATH: Objection. Form, foundation.
4    Q. To your knowledge.
5    A. You have a right to have a copy of all your
6  documents.
7    Q. And did you review the document when you
8  were given a copy?
9    A. I don't recall.
10   Q. Have you received printed statements of your
11 own like this before from OPR in relation to other
12 cases?
13   A. I never received anything from OPR besides
14 this.
15   Q. This one form?
16   A. Yes.
17   Q. And --
18   A. I never had any interaction with OPR.
19   Q. Okay. Well, you were interviewed by OPR,
20 right?
21   A. Yes, on this occasion.
22   Q. Other than that, you're saying you've had no
23 other interaction with them; is that correct?
24   A. Yes, that's correct.

---

66

1    Q. When you received a copy of this, did you
2  review it, do you recall as you sit here today?
3    A. I'm sure I did, yes.
4    Q. And if there was something in the statement
5  that was not accurate, would have reported that?
6    A. Sure.
7    Q. So as you sit here today, is it your
8  testimony that the statement as it is included here
9  is an accurate description of the statement that you
10 provided to OPR, it says here, on February 19th,
11 2015?
12   A. I would say it's correct, yes.
13   Q. During the interview with OPR, did you
14 indicate to OPR that you had checked with
15 classification to determine whether or not the cell
16 had been cleared?
17   A. I cannot recall.
18   Q. That information is not contained in this
19 statement; is that correct?
20   A. That is correct.
21   Q. Would you agree with me that that is an
22 important piece of information as it relates to this
23 incident?
24      MS. McGRATH: Objection. Form, foundation.

---

67

1    A. I believe it's not important.
2    Q. It's not important?
3    A. Uh-uh.
4    Q. Why is that?
5    A. Because it's a common habit that we
6  always -- it's not a habit that we verify cell
7  statements -- cell rooms with classification, so I
8  didn't see a need to put it in there.
9    Q. This statement indicates that you told the
10 OPR investigator that you witnessed Officer Ortiz
11 hitting Detainee Bolton; is that correct?
12   A. That is correct.
13   Q. Do you recall if that was in response to a
14 direct question, or were you just describing the
15 incident?
16   A. I don't recall.
17   Q. As you sit here today, do you have any
18 independent memory of this interview with OPR that
19 was conducted on February 19, 2015?
20   A. No.
21   Q. You don't recall the questions that were
22 asked?
23   A. I do not.
24   Q. And you don't recall the responses that you

---

68

1  gave?
2    A. No.
3    Q. But you have no reason to believe that the
4  statement as it's written here is inaccurate in any
5  way; is that correct?
6    A. No, that's correct.
7    Q. I'm going to have you go back to your
8  use-of-force report, which is page 21 and 22 --
9  sorry -- 20 and 21 of Group Exhibit 1. My questions
10 are for that first page, page 20.
11      You indicated at the bottom of that page --
12   A. I'm sorry. Am I looking at the right one?
13   Q. Page 20.
14   A. I might have messed up my exhibit.
15   Q. You're looking at your first page of
16 response-to-use-of-force form in relation to the
17 Bolton incident, correct?
18   A. Uh-huh.
19   Q. On the bottom of that page, you've checked
20 off two boxes; is that correct?
21   A. Yes.
22   Q. One is diffuse pressure, strike, stun; and
23 the other one is takedown emergency handcuffing; is
24 that correct?

---

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

18 (69 to 72)

69

1    A. Is it under -- I'm sorry -- moving resister?
2    Q. Yes. Those are the two boxes you checked
3 off, the top two boxes, diffuse pressure, strike,
4 stun, and takedown emergency handcuffing?
5       MR. COYNE: Which one are you on?
6       THE WITNESS: Am I looking at the right one?
7       MS. McGRATH: It's right there.
8       THE WITNESS: I was looking at this one.
9       MS. McGRATH: Second moving resister box.
10      MR. FIELD: Sorry.
11 BY MR. FIELD:
12   Q. Do you see that now?
13   A. Yes.
14   Q. You checked those boxes off based on your
15 actions during the incident; is that correct?
16   A. Yes.
17   Q. So that doesn't relate to any actions taken
18 by any other officer at the scene; is that correct?
19   A. That is correct.
20   Q. You indicated under assailant low level, the
21 first assailant low-level box, imminent threat of
22 battery.
23      Do you see that?
24   A. Yes.

70

1    Q. Can you explain to me what factors in terms
2 of Mr. Bolton's behavior during the incident led you
3 to tick off the imminent-threat-of-battery box?
4    A. He was moving around, not giving up his
5 hands. So if there's any struggle trying to get
6 control of an inmate, it's considered immediate
7 threat of battery, there's a chance of receiving a
8 battery.
9    Q. But your testimony was that when he went to
10 the ground, he was on his stomach, correct?
11   A. That is correct.
12   Q. But your testimony is because he didn't
13 immediately give up his hands, that is an automatic
14 potential for an imminent threat of battery; is that
15 correct?
16   A. That is correct.
17   Q. You -- well, let me ask you this question:
18 You said you filled out 30 or 40 of these forms in
19 the past, correct?
20   A. Yes.
21   Q. Have you ever filled out a "Response to
22 Resistance Use of Force" form where you did not
23 check off that it was an imminent threat of battery?
24      MS. McGRATH: Objection. Calls for

71

1 speculation.
2    Q. Well, they're your forms. You know what
3 boxes you checked off. I'm asking if you have any
4 memory of not checking off that box on any
5 use-of-force form.
6    A. I can't recall.
7    Q. You can't recall?
8    A. I've done so many reports, I can't recall.
9    Q. Okay. Under the, I guess it's Box 41, risk
10 factors, do you see that? You checked off gender,
11 age, physical attributes of subject?
12      Sorry. It's right here.
13   A. Yes.
14   Q. You checked -- you ticked the boxes for
15 gender, age, physical attributes of subject, and
16 apparent physical ability of the subject; is that
17 correct?
18   A. Yes.
19   Q. As you sit here today, can you tell me what
20 it was about Mr. Bolton that prompted you to check
21 off those two boxes?
22   A. Well, the gender, age, and physical
23 attributes is because of his -- he's a male subject,
24 young. He's considered strong, active.

72

1    Q. When you say he's considered strong, active,
2 what is that based on?
3    A. His features, the way an inmate looks.
4    Q. I guess what I'm wondering is, is it based
5 on your subjective assessment, or is there some sort
6 of --
7    A. Just my assessment.
8    Q. And what about the apparent physical ability
9 of the subject, is that, again, based on your
10 assessment?
11   A. Yes.
12   Q. And I know you said that you filled out a
13 lot of these forms before.
14      Have you filled out one of these forms in
15 the past where you did not check off both of those
16 boxes, the gender, age, physical attributes of
17 subject, and the apparent physical ability of the
18 subject? Do you recall?
19   A. I can't recall.
20   Q. Do you know if the use-of-force report forms
21 that you fill out are put in your employee file?
22   A. I'm sure they are.
23   Q. Can you look at page 34 of the same Group
24 Exhibit 1? This is an incident report related to

Transcript of Rodrigo Ramos

19 (73 to 76)

Conducted on March 22, 2017

---

73

1 the incident with Mr. Bolton; is that correct?
2 A. That is correct.
3 Q. Under reporting officer, it says R. Ramos.
4 Is that you? Were you the reporting officer for
5 this incident?
6 THE WITNESS: Am I looking at the right one?
7 MS. McGRATH: No, you're not. Which one are
8 you in?
9 MR. FIELD: He might be in the second.
10 THE WITNESS: Sorry. I was looking at the
11 wrong one.
12 BY MR. FIELD:
13 Q. So you're on page 34 now?
14 A. Yes.
15 Q. It's an incident report related to the
16 incident with Mr. Bolton, correct?
17 A. Yes.
18 Q. Under reporting officer, is that your name?
19 A. Yes.
20 Q. So you were the one who completed this
21 incident report?
22 A. The incident.
23 Q. The assessment part is filled out by
24 somebody else?

---

74

1 A. That is by the sergeant.
2 Q. The incident report, even at the time of the
3 incident with Mr. Bolton, that was an electronic
4 form? You filled this out electronically?
5 A. No, this is all paper. I did it on paper.
6 I did not do it electronic.
7 Q. You filled out a form by hand, and then it
8 got typed up like this?
9 A. Yes.
10 Q. The incident report that you filled out by
11 hand, that's a separate document from the
12 use-of-force report; is that correct?
13 A. I only did a use-of-force report. I never
14 wrote an incident report. I don't recall writing an
15 incident report.
16 Q. So I'm just -- I thought you testified a
17 moment ago that the incident portion of this was
18 something that was filled out by you.
19 A. The incident part is my statement, yes. I
20 didn't type this up.
21 Q. Somebody else -- your testimony --
22 A. This was done by a sergeant. The incident
23 report was written by a sergeant. That's the way it
24 was done back in the day.

---

75

1 Q. I see. The incident portion would have
2 been -- your testimony is it was taken from the
3 statement you gave in your use-of-force report?
4 A. That is correct.
5 Q. So you didn't actually enter any of this
6 information?
7 A. No.
8 Q. That would have been done by the sergeant?
9 A. Yes.
10 Q. And so when it lists you as the reporting
11 officer, is that because you were the one who called
12 in the incident to the sergeant?
13 A. That is correct.
14 Q. I'm going to ask you to look at the second
15 packet again, Group Exhibit 2, page 14. This is a
16 Sheriff's Office General Order in relation to
17 use-of-force alert and early intervention.
18 Do you see that?
19 A. Yes.
20 Q. Is this a policy that you've seen before?
21 A. I have.
22 Q. I asked you some questions earlier, and I
23 think it's maybe because I didn't use the proper
24 name.

---

76

1 I'm wondering if you have knowledge of this
2 early-intervention program.
3 A. I do.
4 Q. And what is your understanding of the
5 early-intervention program?
6 A. The way it is, is -- I'm sorry. I'm just
7 going to read it.
8 Q. Okay.
9 A. My understanding of the use-of-force early
10 intervention is to prevent us from doing anything --
11 as far as I know of, is to know how to handle a
12 situation.
13 Q. I asked you this at the beginning, but just
14 to be clear in case I was mistaken in how I called
15 the program, you, yourself, as a corrections officer
16 have never been placed in the early-intervention
17 program; is that correct?
18 A. That is correct.
19 Q. I don't remember if I asked you this. I
20 probably did, but I'm sorry if I did.
21 The number of -- how many use-of-force
22 incidents do you have on your disciplinary record?
23 MS. McGRATH: Objection. Form, foundation.
24 A. I have anywhere from 30 to 40 use of forces.

---

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

20 (77 to 80)

77

1    Q. And how many of those were sustained?
2    A. I have no idea.
3    Q. Well, have you ever --
4        MS. McGRATH: Can we -- this is a
5    misunderstanding. The use-of-force reports are just
6    reports of use of force. You're asking as if it's a
7    grievance?
8        MR. FIELD: Sorry.
9    BY MR. FIELD:
10   Q. I'm asking -- I'm not asking how many
11   use-of-force reports you've filled out. I'm asking
12   how many use-of-force reports complaints have ever
13   been made against you.
14   A. None.
15   Q. I thought that's what you said.
16   A. I thought that's what I said earlier too.
17       MS. McGRATH: He was listening better than
18   we were.
19   Q. You haven't had any use-of-force complaints
20   against you in the four years?
21   A. That's correct.
22   Q. You've never been put in the
23   early-intervention program?
24   A. No, I have not.

78

1    Q. Do you have any knowledge as you sit here
2    today the number of use-of-force complaints you must
3    have against you to be recommended for this program?
4    A. I have no idea.
5        MR. FIELD: I don't have any other
6    questions. Thank you, Officer.
7            CROSS-EXAMINATION
8    BY MR. COYNE:
9    Q. Officer, do you know why Mr. Bolton was sent
10   for a psychological evaluation?
11   A. It's protocol.
12   Q. It happens in every instance?
13   A. Yes.
14   Q. If you could turn your attention to page
15   135, Exhibit 1, Group Exhibit 1? Do you have that
16   in front of you?
17   A. Yes.
18   Q. Could you look at the bottom of the second
19   paragraph?
20   A. Okay.
21   Q. The second-last sentence says, CO Ramos
22   stated Detainee Bolton was ordered to release his
23   hands and they -- to use force to grab his hands.
24   Do you believe it's more likely than not

79

1    that the word "had" was used when you described --
2    when you made the description to
3    Investigator Montanez that caused her to create that
4    sentence?
5        MR. FIELD: Object to vague, but go ahead.
6    A. I'm sorry. Ask that question again.
7    Q. Yeah, I can rephrase it.
8        The phrase "his hands and they -- to use
9    force to grab his hands," that sentence doesn't make
10   any sense to me.
11   A. That is correct.
12   Q. I'm asking you if you believe it's more
13   likely than not, when you relayed your narrative to
14   them, that you stated you had to use force to grab
15   his hands?
16   A. That is correct.
17   Q. Did you use the word "they" meaning you,
18   Officer Ortiz, and Officer Ivory?
19   A. I would say us, yes.
20   Q. So the word "they," to the best of your
21   knowledge, includes not only you, but Officer Ortiz
22   and Officer Ivory; is that correct?
23       MR. FIELD: Object to foundation.
24   A. Yes.

80

1    Q. Do you believe that that is the correct way
2    to interpret the sentence that I just read to you?
3    A. Yes.
4    Q. You testified that at one point
5    Officer Ortiz struck Mr. Bolton, true?
6    A. I believe that he did strike him, yes.
7    Q. You also testified that there was some
8    resistance in your efforts to handcuff Mr. Bolton,
9    true?
10   A. Yes.
11   Q. There did come a time, though, when you
12   successfully handcuffed Mr. Bolton, true?
13   A. That's correct.
14   Q. Is it fair to say that Officer Ortiz did not
15   strike Mr. Bolton at any time after he was
16   successfully handcuffed?
17   A. That is correct.
18   Q. And at the time Officer Ortiz was striking
19   Mr. Bolton, that happened to be at the same time
20   that both you and Officer Ivory were attempting to
21   subdue Mr. Bolton; is that true?
22   A. It was prior.
23   Q. Did Officer Ortiz strike Mr. Bolton at any
24   time during the point at which you were trying to

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

81

1  subdue Mr. Bolton?
2      A. No.
3      Q. In any case, once he was handcuffed, once
4  Mr. Bolton was handcuffed, Officer Ortiz never
5  struck him again?
6      A. That is correct.
7      Q. Did Officer Ortiz ever slam Mr. Bolton's
8  head into the ground?
9      A. Not to my knowledge.
10     Q. Did he ever, in any way, take any physical
11 actions, the consequence of which was to strike his
12 head to the ground?
13     A. Not to my knowledge.
14     Q. Are you aware of any effort made by
15 Officer Ortiz to delay Mr. Bolton from filing his
16 civil lawsuit?
17     A. No.
18     MR. FIELD: Object to foundation.
19     Q. Are you aware of any effort made by anyone
20 to cause Mr. Bolton delay in filing his civil
21 lawsuit?
22     A. Not to my knowledge.
23     MR. FIELD: Same objection.
24     Q. Are you aware of any effort made by

82

1  Officer Ortiz to prevent Mr. Bolton from filing his
2  civil lawsuit?
3      A. Not to my knowledge.
4      MR. FIELD: Same objection.
5      Q. Are you aware of any effort by anyone at all
6  to prevent Mr. Bolton from filing his civil lawsuit?
7      A. Not to my knowledge.
8      MR. FIELD: Same objection.
9      Q. Are you aware of any threat or promise made
10 to Mr. Bolton that had anything to do with his
11 timely filing his civil lawsuit?
12     A. Not to my knowledge.
13     MR. FIELD: Same objection.
14     Q. Are you aware of any statement or effort
15 made by anyone whose purpose or effect was to delay
16 Mr. Bolton from timely filing his civil lawsuit?
17     A. Not to my knowledge.
18     MR. COYNE: Nothing further. Thanks,
19 Officer.
20     MS. McGRATH: I don't have anything.
21     MR. FIELD: Thank you for your time. Much
22 appreciated.
23     THE WITNESS: No problem.
24     (Discussion had off the record.)

83

1      THE WITNESS: Waived.
2      MS. REPORTER: Do you need this typed up?
3      MR. FIELD: Going to hold off for now.
4          FURTHER DEPONENT SAITH NOT.
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

84

1      CERTIFICATE OF SHORTHAND REPORTER-NOTARY PUBLIC
2
3      I, Tiffany M. Pietrzyk, CSR RPR, the officer
4  before whom the foregoing deposition was taken, do
5  hereby certify that the foregoing transcript is a
6  true and correct record of the testimony given; that
7  said testimony was taken by me stenographically and
8  thereafter reduced to typewriting under my
9  direction; that reading and signing was not
10 requested; and that I am neither counsel for,
11 related to, nor employed by any of the parties to
12 this case and have no interest, financial or
13 otherwise, in its outcome.
14
15     IN WITNESS WHEREOF, I have hereunto set my
16 hand and affixed my notarial seal this 13th day of
17 July, 2017.
18
19 My commission expires:
20
21
22  [signature]
23
24

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

22

| A | | | |
|---|---|---|---|
| **aberdeen** | **acting** | 49:24, 50:10, | 61:18 |
| 3:5, 4:6 | 43:9 | 50:16, 51:5, | **annual** |
| **ability** | **action** | 77:13, 77:20, | 12:12, 14:11, |
| 71:16, 72:8, | 57:8 | 78:3 | 60:16 |
| 72:17 | **actions** | **age** | **another** |
| **able** | 13:23, 39:5, | 71:11, 71:15, | 7:23, 24:14, |
| 20:11, 20:19, | 56:15, 56:20, | 71:22, 72:16 | 28:21, 30:8, |
| 22:7, 32:2, | 56:21, 57:8, | **ago** | 38:20 |
| 32:3, 32:7, | 57:9, 59:20, | 18:24, 27:14, | **answer** |
| 47:12, 49:9, | 61:5, 61:18, | 32:10, 41:3, | 8:2, 8:9, 8:16, |
| 51:14 | 61:19, 69:15, | 62:21, 63:14, | 17:3, 18:19 |
| **about** | 69:17, 81:11 | 74:17 | **answered** |
| 11:8, 12:4, | **active** | **agree** | 26:3 |
| 13:17, 16:14, | 71:24, 72:1 | 17:11, 17:14, | **answering** |
| 20:17, 23:15, | **actual** | 17:18, 17:21, | 7:21, 7:22, 8:1 |
| 23:16, 23:17, | 13:12 | 66:21 | **answers** |
| 25:5, 25:18, | **actually** | **ahead** | 8:4 |
| 25:24, 28:5, | 54:21, 75:5 | 61:16, 79:5 | **any** |
| 34:19, 37:3, | **affairs** | **airlines** | 8:14, 8:16, |
| 38:1, 38:5, | 2:14, 2:16 | 10:7, 10:8 | 8:20, 9:4, 9:6, |
| 38:12, 39:5, | **affixed** | **alert** | 9:22, 10:1, |
| 39:8, 40:10, | 84:16 | 75:17 | 10:16, 10:24, |
| 41:4, 42:2, | **after** | **all** | 11:13, 11:22, |
| 43:20, 46:9, | 10:24, 16:18, | 8:18, 23:20, | 12:19, 14:8, |
| 52:2, 52:17, | 19:2, 19:9, | 27:1, 27:2, | 18:16, 19:12, |
| 54:12, 55:14, | 21:11, 21:15, | 40:3, 48:21, | 23:1, 24:9, |
| 56:16, 60:13, | 22:24, 25:19, | 49:21, 51:6, | 24:10, 24:19, |
| 63:5, 71:20, | 25:24, 31:9, | 53:15, 60:20, | 24:24, 25:7, |
| 72:8 | 32:6, 33:22, | 65:5, 74:5, 82:5 | 25:11, 25:16, |
| **academy** | 36:7, 36:11, | **allowed** | 25:21, 26:6, |
| 11:15, 11:17, | 36:14, 37:1, | 46:22 | 30:12, 31:7, |
| 11:20 | 37:21, 43:14, | **already** | 34:7, 34:16, |
| **accept** | 43:23, 44:17, | 33:22, 43:17, | 34:19, 35:6, |
| 28:17, 28:18, | 46:14, 49:4, | 43:20, 44:3, | 35:8, 35:10, |
| 29:4 | 49:9, 50:9, | 44:7, 53:22 | 36:2, 36:7, |
| **account** | 50:10, 51:11, | **also** | 36:10, 36:11, |
| 60:22, 62:10 | 53:5, 53:10, | 16:18, 24:5, | 36:15, 37:1, |
| **accurate** | 53:20, 54:1, | 26:24, 61:23, | 37:5, 38:3, |
| 58:13, 60:22, | 54:11, 64:3, | 80:7 | 39:4, 41:24, |
| 62:10, 66:5, | 80:15 | **altogether** | 43:9, 47:2, |
| 66:9 | **again** | 46:8 | 47:6, 47:9, |
| **accurately** | 8:4, 10:10, | **always** | 52:7, 53:16, |
| 17:12, 17:16, | 14:14, 21:13, | 57:7, 64:22, | 54:11, 61:1, |
| 62:3 | 37:4, 42:17, | 67:6 | 64:22, 65:18, |
| **acted** | 43:23, 44:17, | **american** | 67:17, 68:4, |
| 42:7 | 72:9, 75:15, | 10:7, 10:8 | 69:17, 69:18, |
| | 79:6, 81:5 | **amount** | 70:5, 71:3, |
| | **against** | 54:2, 61:4, | 71:4, 75:5, |
| | 18:15, 49:17, | | |

Transcript of Rodrigo Ramos
Conducted on March 22, 2017                               23

77:19, 78:1,
78:5, 79:10,
80:15, 80:23,
81:3, 81:10,
81:14, 81:19,
81:24, 82:5,
82:9, 82:14,
84:11
**anybody**
24:17, 37:3
**anyone**
28:2, 37:8,
37:16, 81:19,
82:5, 82:15
**anything**
11:13, 12:2,
30:16, 30:18,
40:5, 40:11,
43:16, 43:19,
44:4, 44:6,
44:17, 44:21,
48:11, 48:13,
48:15, 48:21,
48:24, 50:16,
50:18, 50:21,
50:24, 51:2,
51:6, 51:10,
53:5, 63:6,
65:13, 76:10,
82:10, 82:20
**anywhere**
33:5, 76:24
**apparent**
61:2, 71:16,
72:8, 72:17
**applying**
18:22
**appreciated**
82:22
**approach**
15:9
**approaching**
29:11
**appropriate**
13:22, 46:13
**architecture**
12:3
**arms**
45:16

**around**
45:10, 70:4
**arrived**
28:16, 31:6,
51:12, 51:18,
53:5, 53:10
**arriving**
29:8
**asked**
24:14, 24:17,
24:19, 26:2,
27:15, 27:18,
41:19, 48:12,
60:12, 67:22,
75:22, 76:13,
76:19
**asking**
7:20, 8:10,
8:13, 21:19,
21:20, 24:24,
40:14, 40:17,
43:20, 71:3,
77:6, 77:10,
77:11, 79:12
**assailant**
69:20, 69:21
**assessment**
72:5, 72:7,
72:10, 73:23
**assigned**
28:12, 28:13,
41:14
**assignment**
28:14, 30:9,
41:12, 41:16
**assigns**
29:18
**assist**
45:10
**assume**
8:8
**assuming**
43:3, 43:4
**attempt**
23:19, 24:10
**attempted**
42:11
**attempting**
42:12, 42:20,

48:16, 48:20,
49:1, 80:20
**attention**
53:14, 78:14
**attorney's**
4:13
**attributes**
71:11, 71:15,
71:23, 72:16
**automatic**
70:13
**aware**
18:2, 19:23,
20:7, 25:7,
25:21, 29:19,
29:24, 30:4,
30:8, 30:13,
30:21, 81:14,
81:19, 81:24,
82:5, 82:9,
82:14

---
**B**
---
**back**
25:6, 32:19,
39:15, 39:16,
39:22, 45:13,
45:16, 50:13,
50:14, 54:3,
54:5, 68:7,
74:24
**based**
13:22, 15:20,
17:6, 42:21,
45:4, 46:9,
47:4, 48:6,
57:9, 58:18,
61:8, 62:5,
69:14, 72:2,
72:4, 72:9
**basic**
7:18, 12:5
**basically**
13:7, 13:9,
35:13, 38:13
**battery**
69:22, 70:7,
70:8, 70:14,

70:23
**because**
22:9, 31:17,
32:12, 39:10,
40:13, 52:23,
55:10, 56:14,
67:5, 70:12,
71:23, 75:11,
75:23
**been**
7:5, 7:13,
9:13, 9:18,
15:24, 18:1,
18:9, 18:11,
18:13, 19:12,
19:16, 19:17,
20:11, 32:12,
39:3, 43:8,
46:13, 53:22,
57:11, 58:5,
58:6, 66:16,
75:2, 75:8,
76:16, 77:13,
77:22
**before**
3:13, 7:14,
7:21, 7:22,
8:16, 18:4,
19:18, 20:10,
41:24, 42:8,
46:10, 57:6,
62:18, 65:11,
72:13, 75:20,
84:4
**beginning**
76:13
**behalf**
4:3, 4:11, 5:3
**behavior**
70:2
**behind**
45:16
**being**
28:20, 40:23,
44:12, 62:24
**believe**
16:23, 27:10,
39:18, 40:12,

Transcript of Rodrigo Ramos
Conducted on March 22, 2017                                    24

40:22, 41:9,
44:19, 50:1,
54:5, 67:1,
68:3, 78:24,
79:12, 80:1,
80:6
**believed**
55:20
**besides**
9:4, 11:14,
28:2, 65:13
**best**
53:11, 79:20
**better**
77:17
**between**
16:6, 51:5
**beyond**
13:17, 30:16,
39:2, 43:16,
43:19, 44:2,
44:7, 53:11
**bit**
39:14
**bolton**
1:5, 9:2,
19:23, 28:16,
29:24, 30:24,
31:3, 31:7,
31:16, 32:14,
38:24, 39:3,
39:6, 39:9,
39:12, 40:2,
40:17, 41:13,
41:19, 42:1,
42:12, 42:21,
43:16, 43:19,
44:17, 44:20,
45:1, 45:7,
45:9, 45:12,
45:15, 45:18,
46:1, 46:4,
46:11, 46:14,
47:1, 47:5,
47:8, 47:16,
47:19, 47:22,
48:10, 48:16,

48:20, 49:1,
49:2, 49:5,
49:15, 50:10,
50:15, 52:7,
52:17, 53:17,
53:22, 54:7,
55:1, 55:19,
56:9, 57:12,
58:7, 58:21,
61:11, 62:9,
67:11, 68:17,
71:20, 73:1,
73:16, 74:3,
78:9, 78:22,
80:5, 80:8,
80:12, 80:15,
80:19, 80:21,
80:23, 81:1,
81:4, 81:15,
81:20, 82:1,
82:6, 82:10,
82:16
**bolton's**
70:2, 81:7
**both**
72:15, 80:20
**bottom**
54:19, 68:11,
68:19, 78:18
**boulevard**
5:6
**box**
69:9, 69:21,
70:3, 71:4, 71:9
**boxes**
24:1, 24:6,
24:12, 24:15,
24:17, 24:20,
24:24, 27:16,
27:18, 68:20,
69:2, 69:3,
69:14, 71:3,
71:14, 71:21,
72:16
**break**
8:14, 8:15,
8:17
**bring**
38:8, 38:9

**bringing**
29:22
**brought**
31:9, 31:13
**brown**
34:6
**building**
14:18

**C**

**call**
30:17, 32:1,
32:18, 32:21,
33:4, 33:10,
33:12, 33:15,
39:17, 42:6,
42:8, 42:11,
43:2, 46:11,
50:4, 50:9,
52:23
**called**
7:5, 29:10,
32:22, 34:3,
42:20, 43:7,
45:2, 49:18,
75:11, 76:14
**calls**
33:8, 46:17,
70:24
**came**
29:4, 39:22,
43:14, 44:17
**camera**
54:8
**can't**
12:10, 71:6,
71:7, 71:8,
72:19
**cannot**
66:17
**capacity**
1:10, 2:4
**caption**
1:13, 2:1
**capture**
60:21, 61:24
**captured**
19:18, 19:24

**captures**
62:3
**case**
1:12, 19:22,
22:18, 26:11,
76:14, 81:3,
84:12
**cases**
22:23, 65:12
**cause**
81:20
**caused**
79:3
**cc**
58:14
**cell**
15:13, 29:15,
29:19, 29:24,
30:9, 30:13,
30:21, 30:24,
31:3, 31:14,
31:15, 31:17,
32:2, 32:4,
32:7, 32:12,
39:20, 40:2,
40:8, 40:21,
41:1, 41:5,
41:13, 43:15,
44:1, 44:18,
44:24, 45:1,
45:3, 55:19,
56:3, 66:15,
67:6, 67:7
**center**
4:14
**certain**
14:24, 16:16,
49:4
**certificate**
84:1
**certificates**
11:22
**certified**
3:14
**certify**
84:5
**chance**
46:10, 70:7

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

25

change
35:22, 36:1
changed
57:5
chart
13:9
check
24:1, 30:15,
70:23, 71:20,
72:15
checked
24:6, 56:2,
66:14, 68:19,
69:2, 69:14,
71:3, 71:10,
71:14
checking
24:16, 24:24,
27:16, 27:19,
71:4
chicago
1:16, 3:6, 4:8,
4:16, 5:8, 14:19
christopher
2:11
cited
58:19
ciukaj
2:7, 52:21,
53:4
civil
81:16, 81:20,
82:2, 82:6,
82:11, 82:16
classes
12:5
classification
29:18, 30:17,
32:1, 32:18,
32:22, 33:2,
33:4, 33:12,
39:17, 40:6,
43:15, 44:1,
56:2, 66:15,
67:7
clear
8:10, 45:1,
64:6, 76:14

cleared
43:15, 44:1,
44:18, 56:3,
66:16
clerk
10:11
clip
54:22
closed
48:1
cody
2:10
college
10:24, 11:2,
11:3, 11:5,
11:8, 11:16,
11:23, 12:4
colleges
11:13
come
25:6, 34:4,
43:24, 44:24,
80:11
commander
37:13, 37:14,
37:15, 37:19,
38:1, 38:9,
38:10, 38:11,
38:15, 38:23,
39:3, 39:8
commander's
22:3, 22:5,
23:5
comment
34:19, 35:6
commission
84:19
common
67:5
complained
18:22
complaints
18:15, 77:12,
77:19, 78:2
complete
58:12
completed
73:20

completely
17:19, 17:22
component
13:3
compound
14:18
computer
22:11, 30:15
computerized
24:5
computers
22:9, 22:12
conducted
67:19
confirmed
39:19, 40:7
consequence
81:11
considered
70:6, 71:24,
72:1
consist
13:6, 13:18,
14:23, 36:19
consult
23:13
contact
15:6, 15:7
contacted
41:22
contacting
42:3
contain
60:22
contained
66:18
contains
23:24, 62:9
content
44:14
context
62:23
continued
1:13, 2:1
continuing
40:13
control
61:1, 70:6

conversation
36:16, 36:18,
36:19, 36:21,
37:24, 38:2,
38:4, 44:10,
44:12, 44:14,
54:12
cook
1:8, 1:11, 2:6,
2:12, 2:18,
2:21, 4:13, 9:9,
9:23, 14:1, 60:1
copy
64:20, 64:21,
64:23, 64:24,
65:1, 65:2,
65:5, 65:8, 66:1
correction
9:12
correctional
2:8, 9:13
corrections
2:7, 9:21,
12:11, 15:24,
17:7, 18:14,
76:15
could
7:9, 8:2, 16:3,
23:11, 23:12,
30:15, 39:19,
40:2, 40:7,
40:20, 49:6,
78:14, 78:18
couldn't
31:16, 32:11,
40:13, 41:9
counsel
6:9, 54:16,
57:21, 84:10
county
1:9, 1:11, 2:6,
2:13, 2:18,
2:21, 4:13, 9:9,
9:23, 14:1, 60:1
couple
13:5
courses
12:6

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

26

court
1:1, 7:23, 8:4
coyne
5:4, 5:5, 6:6,
42:14, 42:23,
43:11, 46:16,
46:23, 49:7,
52:19, 53:1,
59:11, 61:13,
69:5, 78:8,
82:18
create
79:3
credits
11:17, 11:19,
12:7
cross-examination
6:5, 78:7
csr
1:24, 84:3
current
9:11, 57:10
currently
9:8, 22:11,
22:12
cv
1:12

**D**

daley
4:14
date
37:20, 62:22
day
12:20, 28:13,
33:21, 34:2,
36:22, 37:1,
37:9, 41:12,
55:4, 62:4,
63:9, 74:24,
84:16
deal
15:13
decides
21:1
decision
42:2, 42:5
defendants
2:23, 4:11, 5:3

defensive
12:21, 14:21
degree
11:23
delay
81:15, 81:20,
82:15
department
2:6
depending
15:10
deponent
83:4
deposed
7:14, 52:22
deposition
1:15, 3:1, 8:7,
8:21, 60:12,
84:4
describe
17:9, 39:15,
45:4, 56:20,
61:2, 61:3,
61:17
described
79:1
describing
67:14
description
60:24, 64:4,
64:10, 66:9,
79:2
detail
61:4, 61:17
details
36:1, 38:3,
39:5, 59:19,
60:21, 61:24,
62:3
detainee
13:22, 15:2,
29:11, 29:16,
30:13, 30:21,
31:16, 67:11,
78:22
detainee's
30:9
determine
41:21, 66:15

determined
29:15
diaz
2:15
differed
35:19
different
15:16, 15:20
diffuse
68:22, 69:3
direct
6:3, 7:7, 67:14
direction
84:9
director
2:5
disciplinary
76:22
discipline
18:20
disciplined
19:12
discuss
37:12, 37:18
discussed
36:24, 37:8
discussion
31:20, 32:13,
32:14, 44:9,
82:24
district
1:1, 1:2
division
1:3
doc
58:14
document
9:4, 29:12,
59:2, 60:6,
62:18, 62:20,
63:1, 63:3,
63:6, 63:7,
63:15, 63:20,
63:22, 65:7,
74:11
documentation
29:7, 58:13
documents
8:20, 8:23,

9:4, 9:6, 65:6
doing
76:10
dominguez
37:15, 37:19,
38:1, 38:9,
38:10, 38:11,
38:15, 38:23,
39:3, 39:8
done
19:4, 19:7,
43:10, 57:7,
71:8, 74:22,
74:24, 75:8
dorm
32:19
doubt
24:21
down
7:24, 8:4,
16:12, 38:22,
53:14
dr
1:11, 2:2
duly
7:5
during
13:13, 35:11,
35:20, 39:11,
48:19, 48:21,
51:4, 66:13,
69:15, 70:2,
80:24
duties
60:3

**E**

each
21:20, 23:21,
25:9, 25:23
earlier
20:14, 38:17,
55:3, 55:9,
60:12, 75:22,
77:16
early
75:17, 76:9
early-interventi-
on
18:3, 18:10,

Transcript of Rodrigo Ramos
Conducted on March 22, 2017                                    27

76:2, 76:5,
76:16, 77:23
**easier**
8:5
**eastern**
1:3
**easy**
53:1
**effect**
82:15
**effective**
60:9
**effort**
81:14, 81:19,
81:24, 82:5,
82:14
**efforts**
80:8
**either**
12:7, 12:8,
15:2, 29:21
**elbow**
45:7
**electronic**
74:3, 74:6
**electronically**
74:4
**else**
13:18, 28:2,
30:16, 30:18,
37:16, 44:4,
44:7, 56:16,
73:24, 74:21
**emergency**
68:23, 69:4
**employed**
9:8, 10:3,
10:6, 84:11
**employee**
72:21
**employees**
2:12, 2:18,
2:19
**employment**
10:16, 12:11
**enter**
15:13, 31:14,
31:21, 32:2,

32:3, 32:7,
32:8, 75:5
**esquire**
4:4, 4:12, 5:4
**essential**
58:15
**esther**
2:17
**estimate**
16:4, 49:9,
49:11
**evaluation**
78:10
**even**
48:6, 74:2
**event**
59:19
**events**
58:13, 59:14,
59:16, 60:23,
62:10
**ever**
18:1, 19:12,
24:10, 24:14,
24:19, 25:11,
25:16, 49:5,
70:21, 77:3,
77:12, 81:7,
81:10
**every**
78:12
**everybody**
32:6
**everyone**
44:24
**everything**
7:24, 46:9,
59:2, 59:9,
59:12
**exact**
37:20, 41:8,
44:10, 61:19,
62:21
**exactly**
16:22, 31:15,
38:16, 41:6,
64:8, 64:23
**examination**
6:2, 6:3, 7:7

**examined**
7:6
**example**
23:24, 33:8
**examples**
13:14, 13:15
**executive**
2:5
**exhibit**
6:11, 6:12,
54:15, 54:18,
57:19, 57:20,
62:15, 68:9,
68:14, 72:24,
75:15, 78:15
**exhibits**
6:10
**experience**
17:7
**expires**
84:19
**explain**
8:12, 15:8,
20:18, 34:24,
70:1
**explained**
51:22, 52:2
**extent**
61:2

|        F        |

**faced**
49:17
**facilities**
58:14
**facing**
50:13
**fact**
43:1, 47:12,
56:9
**factors**
70:1, 71:10
**fair**
15:15, 18:8,
42:7, 42:10,
42:18, 43:10,
43:13, 49:13,
80:14

**far**
13:10, 58:23,
76:11
**features**
72:3
**february**
66:10, 67:19
**fee**
10:11
**feel**
47:9
**few**
49:13
**field**
4:4, 6:4, 7:8,
52:22, 53:3,
62:17, 69:10,
69:11, 73:9,
73:12, 77:8,
77:9, 78:5,
79:5, 79:23,
81:18, 81:23,
82:4, 82:8,
82:13, 82:21,
83:3
**fight**
15:2, 15:11,
16:11
**figure**
41:6, 59:5
**file**
72:21
**filing**
81:15, 81:20,
82:1, 82:6,
82:11, 82:16
**fill**
16:4, 16:15,
16:23, 17:15,
17:19, 17:23,
19:2, 19:16,
21:10, 21:13,
21:16, 22:4,
22:9, 22:12,
22:15, 22:24,
23:5, 23:18,
24:9, 25:8,
25:13, 56:18,

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

28

| | | | |
|---|---|---|---|
| 56:24, 72:21 | **floor** | **foundation** | 49:5, 64:22, |
| **filled** | 3:5, 4:7, | 17:2, 23:22, | 70:13 |
| 13:18, 16:8, | 26:15, 26:16, | 29:17, 33:6, | **given** |
| 16:19, 17:12, | 28:1, 45:8, | 42:14, 46:16, | 43:8, 65:8, |
| 20:14, 21:15, | 45:12, 45:15 | 50:5, 59:13, | 84:6 |
| 22:18, 22:21, | **follow-up** | 61:13, 65:3, | **giving** |
| 24:11, 26:10, | 18:19 | 66:24, 76:23, | 65:2, 70:4 |
| 26:21, 33:22, | **follows** | 79:23, 81:18 | **go** |
| 54:24, 55:4, | 7:6 | **four** | 7:18, 10:18, |
| 61:10, 62:8, | **force** | 9:15, 9:18, | 11:2, 12:14, |
| 70:18, 70:21, | 13:11, 13:21, | 15:24, 17:7, | 13:9, 13:21, |
| 72:12, 72:14, | 14:2, 18:3, | 18:13, 30:20, | 20:19, 21:22, |
| 73:23, 74:4, | 46:13, 54:24, | 30:23, 77:20 | 31:12, 34:24, |
| 74:7, 74:10, | 59:10, 60:3, | **four-year** | 39:14, 40:21, |
| 74:18, 77:11 | 60:23, 61:4, | 16:3 | 41:5, 45:3, |
| **filling** | 61:18, 62:11, | **frame** | 54:2, 54:4, |
| 19:13, 19:19, | 70:22, 77:6, | 16:21, 37:20 | 61:16, 68:7, |
| 20:3, 20:10, | 78:23, 79:9, | **front** | 79:5 |
| 20:16, 21:5, | 79:14 | 78:16 | **going** |
| 21:18, 23:2, | **forces** | **full** | 7:18, 8:8, |
| 23:14, 23:15, | 76:24 | 9:18, 60:19 | 13:7, 35:14, |
| 24:3, 24:8, | **foregoing** | **full-time** | 41:1, 42:6, |
| 24:15, 24:18, | 84:4, 84:5 | 9:16, 9:18, | 46:7, 54:17, |
| 24:20, 24:21, | **form** | 10:14, 10:16 | 54:20, 55:14, |
| 26:7, 27:2, | 6:11, 13:15, | **fully** | 55:19, 57:18, |
| 27:11, 28:1, | 13:17, 16:19, | 20:7 | 68:7, 75:14, |
| 55:7 | 17:2, 17:16, | **further** | 76:7, 83:3 |
| **financial** | 17:19, 17:23, | 82:18, 83:4 | **gotten** |
| 84:12 | 20:16, 23:14, | **G** | 44:23 |
| **find** | 23:22, 23:24, | **gained** | **grab** |
| 23:11, 23:12 | 24:15, 26:2, | 11:19 | 45:6, 78:23, |
| **fine** | 27:16, 27:19, | **gave** | 79:9, 79:14 |
| 55:17 | 29:17, 33:6, | 49:10, 52:1, | **graduated** |
| **finish** | 36:5, 46:16, | 63:14, 63:17, | 10:20 |
| 7:20, 7:22 | 49:7, 50:5, | 63:23, 64:1, | **graph** |
| **firearm** | 54:24, 59:11, | 64:3, 64:21, | 13:7 |
| 12:18 | 61:13, 65:3, | 64:23, 65:1, | **grievance** |
| **first** | 65:15, 66:24, | 68:1, 75:3 | 77:7 |
| 7:5, 7:16, | 68:16, 70:22, | **gender** | **ground** |
| 28:16, 29:24, | 71:5, 74:4, | 71:10, 71:15, | 7:18, 38:22, |
| 37:4, 50:3, | 74:7, 76:23 | 71:22, 72:16 | 39:4, 42:1, |
| 57:5, 60:19, | **forms** | **general** | 42:12, 42:21, |
| 62:13, 68:10, | 16:8, 17:12, | 6:12, 12:5, | 46:5, 46:12, |
| 68:15, 69:21 | 23:5, 57:1, | 57:23, 58:10, | 46:15, 47:1, |
| **fist** | 70:18, 71:2, | 75:16 | 49:10, 52:4, |
| 48:1 | 72:13, 72:14, | **give** | 70:10, 81:8, |
| **five** | 72:20 | 8:2, 48:12, | 81:12 |
| 57:22 | **found** | | **group** |
| | 23:7 | | 6:11, 6:12, |

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

29

54:15, 54:18,
57:19, 57:20,
62:14, 68:9,
72:23, 75:15,
78:15
**guess**
71:9, 72:4
**guessing**
21:22
**guidelines**
58:10
**gun**
12:14

**H**

**habit**
67:5, 67:6
**hand**
22:15, 22:21,
23:2, 24:3,
24:8, 74:7,
74:11, 84:16
**handcuff**
15:5, 15:12,
16:12, 45:18,
45:19, 46:2,
46:14, 46:24,
47:10, 47:12,
48:16, 48:20,
49:1, 49:6, 80:8
**handcuffed**
80:12, 80:16,
81:3, 81:4
**handcuffing**
14:24, 47:8,
48:10, 68:23,
69:4
**handcuffs**
15:4, 49:15,
52:4
**handed**
29:7
**handle**
15:11, 42:19,
76:11
**hands**
48:12, 49:6,
49:10, 70:5,

70:13, 78:23,
79:8, 79:9,
79:15
**happened**
31:19, 32:5,
45:5, 49:16,
51:23, 53:10,
80:19
**happens**
78:12
**happy**
8:11
**head**
8:3, 8:6, 81:8,
81:12
**hear**
51:10
**heard**
18:4
**held**
3:1, 14:17
**here**
14:19, 24:23,
25:7, 26:6,
27:21, 30:20,
30:22, 31:8,
35:16, 44:13,
45:5, 45:24,
48:7, 54:6,
58:20, 59:18,
61:8, 61:9,
62:7, 63:7,
63:16, 64:2,
64:12, 64:16,
66:2, 66:7,
66:8, 66:10,
67:17, 68:4,
71:12, 71:19,
78:1
**hereby**
84:5
**herein**
7:5
**hereunto**
84:15
**high**
10:18, 10:20,
10:24

**himself**
45:8, 46:12,
46:14
**hit**
47:21, 47:24
**hitting**
67:11
**hold**
9:22, 83:3
**holding**
26:15, 26:16,
28:1
**honest**
14:6, 36:20,
55:24, 56:7
**hostile**
15:2
**hours**
13:5, 16:23,
19:1
**house**
31:18
**housing**
38:19, 41:9
**however**
54:1
**hypothetical**
46:7

**I**

**id**
29:12, 29:14,
29:21, 30:9
**idea**
33:7, 33:14,
56:7, 77:2, 78:4
**identification**
54:16, 57:21
**illinois**
1:2, 1:16, 3:6,
3:16, 4:8, 4:16,
5:8
**immediate**
70:6
**immediately**
50:9, 70:13
**imminent**
69:21, 70:14,

70:23
**imminent-threat--
of-battery**
70:3
**important**
17:12, 17:18,
66:22, 67:1,
67:2
**impossible**
8:7
**in-service**
12:13
**inaccurate**
68:4
**incident**
8:24, 9:1,
16:19, 17:9,
18:21, 19:2,
19:8, 19:9,
19:16, 19:17,
19:21, 19:22,
19:24, 21:7,
21:17, 22:17,
23:16, 23:17,
25:14, 25:18,
25:19, 25:23,
25:24, 26:1,
26:5, 26:22,
27:17, 28:6,
28:8, 29:2,
29:23, 33:18,
34:20, 35:11,
35:20, 36:2,
36:11, 37:21,
38:5, 38:7,
39:11, 39:15,
41:24, 43:6,
50:4, 54:11,
54:13, 55:1,
55:4, 55:11,
56:19, 58:6,
58:21, 59:3,
60:22, 61:5,
61:11, 62:1,
62:4, 62:9,
63:2, 63:9,
63:10, 66:23,
67:15, 68:17,

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

30

| | | | |
|---|---|---|---|
| 69:15, 70:2,<br>72:24, 73:1,<br>73:5, 73:15,<br>73:16, 73:21,<br>73:22, 74:2,<br>74:3, 74:10,<br>74:14, 74:15,<br>74:17, 74:19,<br>74:22, 75:1,<br>75:12<br>**incidents**<br>16:16, 57:24,<br>58:13, 76:22<br>**include**<br>56:5, 56:8,<br>56:12, 57:16,<br>59:19, 60:23<br>**included**<br>66:8<br>**includes**<br>79:21<br>**independent**<br>31:8, 67:18<br>**indicate**<br>38:23, 43:14,<br>43:24, 52:5,<br>55:18, 56:1,<br>59:9, 66:14<br>**indicated**<br>25:12, 41:3,<br>44:24, 45:1,<br>59:15, 68:11,<br>69:20<br>**indicates**<br>58:12, 60:6,<br>67:9<br>**individual**<br>18:22<br>**individually**<br>1:9, 2:3<br>**inform**<br>40:1<br>**information**<br>66:18, 66:22,<br>75:6<br>**informed**<br>30:24, 32:10<br>**informs**<br>30:5 | **initial**<br>63:10<br>**initially**<br>55:20<br>**initiate**<br>15:6, 15:7<br>**injuries**<br>61:3<br>**inmate**<br>13:22, 15:6,<br>15:9, 15:12,<br>16:12, 28:19,<br>29:13, 31:7,<br>31:9, 31:13,<br>31:18, 31:20,<br>31:23, 32:8,<br>32:11, 38:19,<br>38:21, 39:19,<br>40:1, 40:3,<br>40:7, 40:12,<br>40:13, 41:4,<br>45:7, 45:11,<br>52:3, 53:13,<br>70:6, 72:3<br>**inmate's**<br>29:14<br>**inside**<br>33:15<br>**instance**<br>20:5, 78:12<br>**instances**<br>21:4, 21:9,<br>21:14, 23:1,<br>23:4, 25:3,<br>27:15<br>**institutions**<br>12:8<br>**instrument**<br>60:24<br>**interaction**<br>65:18, 65:23<br>**interest**<br>84:12<br>**internal**<br>2:13, 2:15<br>**interpret**<br>80:2<br>**intervention**<br>75:17, 76:10 | **interview**<br>53:17, 64:4,<br>66:13, 67:18<br>**interviewed**<br>54:7, 65:19<br>**investigating**<br>63:2<br>**investigator**<br>2:14, 2:16,<br>67:10, 79:3<br>**involve**<br>12:19<br>**involved**<br>16:11, 21:7,<br>21:17, 23:2,<br>25:14, 25:18,<br>25:22, 26:7,<br>26:22, 26:24,<br>38:20, 38:21<br>**issue**<br>19:21, 22:18,<br>26:6, 38:8<br>**issued**<br>58:2, 58:6,<br>60:6<br>**itself**<br>13:13, 25:19,<br>25:24, 37:22,<br>38:6, 38:7,<br>39:11, 39:15,<br>41:24, 48:9,<br>54:11<br>**ivory**<br>2:11, 27:4,<br>27:6, 27:18,<br>28:3, 28:24,<br>29:4, 29:10,<br>31:6, 31:9,<br>31:13, 32:11,<br>32:15, 32:16,<br>40:3, 40:5,<br>44:16, 44:21,<br>45:9, 47:4,<br>47:5, 48:15,<br>49:20, 50:18,<br>50:24, 79:18,<br>79:22, 80:20<br>**———— J ————**<br>**jackson**<br>5:6 | **jail**<br>2:13, 9:9,<br>9:11, 9:14,<br>9:22, 9:23,<br>10:1, 10:4,<br>14:1, 16:7,<br>18:2, 25:8,<br>25:21, 28:7<br>**jail's**<br>17:15, 17:22,<br>56:23<br>**james**<br>2:7<br>**january**<br>19:22, 22:17,<br>26:5, 28:6,<br>29:23<br>**job**<br>1:22, 10:12<br>**john**<br>5:4, 5:5<br>**joined**<br>42:16, 43:12,<br>61:14<br>**jones**<br>1:12, 2:2<br>**joseph**<br>34:6<br>**juan**<br>2:15<br>**july**<br>84:17<br>**june**<br>14:12, 14:14,<br>58:3<br>**———— K ————**<br>**kelvyn**<br>10:19<br>**kind**<br>11:22, 19:6,<br>20:20, 29:9,<br>36:11<br>**know**<br>8:10, 8:11,<br>8:15, 17:24,<br>18:19, 19:3,<br>26:6, 26:9, |

Transcript of Rodrigo Ramos
Conducted on March 22, 2017                                                  31

29:3, 29:7,
30:3, 32:7,
38:12, 38:14,
49:11, 51:10,
52:24, 53:2,
53:13, 53:24,
55:24, 64:23,
71:2, 72:12,
72:20, 76:11,
78:9
**knowing**
13:10, 14:24
**knowledge**
50:6, 50:7,
65:4, 76:1,
78:1, 79:21,
81:9, 81:13,
81:22, 82:3,
82:7, 82:12,
82:17

**L**

**language**
58:18, 59:7
**last**
7:11, 14:10,
14:12, 33:13
**law**
5:5
**lawsuit**
81:16, 81:21,
82:2, 82:6,
82:11, 82:16
**leading**
60:23, 62:10
**led**
70:2
**left**
42:10, 42:18,
53:22
**legs**
45:10
**letter**
58:10, 60:20,
61:3
**lettiere**
2:10
**level**
13:21, 69:20

**lieutenant**
20:22, 21:1
**likely**
78:24, 79:13
**likewise**
7:22
**line**
61:11
**listening**
77:17
**lists**
75:10
**litroy**
1:5
**little**
39:14
**located**
28:7
**location**
3:2
**lodged**
18:15
**loevy**
3:4, 4:5
**log**
33:8, 33:9
**logical**
18:18
**long**
9:13, 10:12,
13:3, 33:12,
49:9, 49:12,
51:11, 53:19
**look**
54:17, 54:20,
57:18, 72:23,
75:14, 78:18
**looking**
68:12, 68:15,
69:6, 69:8,
73:6, 73:10
**looks**
72:3
**lot**
72:13
**loud**
18:6
**low**
69:20

**low-level**
69:21

**M**

**made**
29:19, 29:24,
30:4, 30:8,
30:12, 30:21,
33:10, 33:15,
35:10, 39:17,
42:2, 42:5,
50:4, 50:8,
63:8, 77:13,
79:2, 81:14,
81:19, 81:24,
82:9, 82:15
**make**
8:10, 8:18,
20:20, 23:19,
24:11, 31:24,
32:21, 34:19,
35:6, 63:11,
79:9
**making**
36:10
**male**
71:23
**manner**
61:1
**many**
11:19, 12:7,
18:14, 20:14,
47:21, 47:23,
71:8, 76:21,
77:1, 77:10,
77:12
**march**
1:17
**marked**
29:21, 54:15,
54:18, 57:20
**maybe**
19:4, 75:23
**mcgrath**
4:12, 17:2,
23:22, 26:2,
29:17, 33:6,
42:16, 43:12,

46:17, 50:5,
53:2, 59:13,
61:14, 62:16,
65:3, 66:24,
69:7, 69:9,
70:24, 73:7,
76:23, 77:4,
77:17, 82:20
**mean**
9:1, 15:3,
15:8, 43:5,
57:4, 59:14
**meaning**
79:17
**medical**
53:14, 53:23
**meets**
58:21, 61:12
**megan**
4:12
**memory**
31:7, 31:8,
45:4, 67:18,
71:4
**mention**
52:9, 52:11,
52:15
**mentioned**
11:14, 14:21,
32:13
**messed**
68:14
**method**
57:6
**might**
68:14, 73:9
**miguel**
2:9
**minor**
31:20, 32:13,
32:14
**minute**
18:24, 25:6,
27:14, 32:10,
41:3, 51:16,
51:17, 55:16
**minutes**
19:7, 53:21,

54:1
mistaken
76:14
misunderstanding
77:5
moment
74:17
montanez
2:17, 79:3
moraine
11:15
more
78:24, 79:12
moving
69:1, 69:9,
70:4
much
12:21, 13:8,
13:20, 16:13,
53:15, 82:21
must
60:20, 78:2
myself
27:4, 49:20

N

name
7:10, 7:12,
52:19, 52:23,
73:18, 75:24
narrative
55:15, 55:18,
55:23, 56:1,
56:6, 56:8,
56:13, 57:12,
79:13
nature
61:2
need
8:14, 20:8,
55:11, 67:8,
83:2
needed
47:9
neither
84:10
never
18:9, 18:11,

18:18, 18:20,
24:17, 56:16,
65:13, 65:18,
74:13, 76:16,
77:22, 81:4
next
1:13, 21:20,
33:21, 34:1,
45:5, 49:16
nine
58:9, 58:10
nneka
1:11, 2:2
nodding
8:3, 8:6
none
18:17, 77:14
north
3:5, 4:6
northern
1:2
notarial
84:16
notary
3:15
nothing
82:18
notice
3:13
notifications
60:3
notified
50:1, 50:3
number
16:4, 23:24,
31:15, 58:12,
76:21, 78:2
numbers
54:19

O

object
79:5, 79:23,
81:18
objection
17:2, 23:22,
26:2, 29:17,
33:6, 42:14,

42:23, 43:11,
46:16, 46:23,
49:7, 50:5,
59:11, 61:13,
65:3, 66:24,
70:24, 76:23,
81:23, 82:4,
82:8, 82:13
objections
46:17
occasion
65:21
occurred
17:10, 20:8,
25:19, 26:1,
28:8, 31:9,
35:20, 38:14,
63:9
occurs
12:22, 15:10
office
2:20, 2:22,
4:13, 5:5, 22:3,
22:5, 22:6,
23:6, 26:18,
27:24, 28:2,
32:18, 34:3,
34:13, 57:23,
60:1, 75:16
officers
2:8, 21:7,
21:17, 22:6,
23:10, 23:13,
23:20, 24:11,
25:8, 25:14,
25:17, 25:22,
26:6, 26:23,
56:21
official
1:10, 2:4
oh
63:21
okay
8:20, 10:14,
12:17, 13:15,
15:15, 18:13,
22:4, 23:4,
23:9, 23:16,

31:19, 32:17,
32:20, 34:5,
38:8, 40:15,
48:13, 49:23,
51:17, 51:24,
52:5, 53:7,
59:15, 59:17,
62:6, 63:3,
63:18, 63:21,
65:19, 71:9,
76:8, 78:20
once
12:22, 14:8,
49:15, 52:23,
54:1, 81:3
one
11:10, 12:16,
12:17, 12:20,
16:23, 22:21,
30:3, 42:2,
54:19, 62:14,
65:15, 68:12,
68:22, 68:23,
69:5, 69:6,
69:8, 72:14,
73:6, 73:7,
73:11, 73:20,
75:11, 80:4
one-time
29:11
only
26:22, 29:12,
47:15, 56:14,
56:19, 59:18,
74:13, 79:21
open
48:1
opinion
35:14, 35:17,
35:20
opportunity
42:8, 43:8
opr
63:4, 63:8,
63:17, 64:4,
64:19, 65:11,
65:13, 65:18,
65:19, 66:10,

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

33

| | | | |
|---|---|---|---|
| 66:13, 66:14,<br>67:10, 67:18<br>**oral**<br>8:2<br>**order**<br>6:12, 15:4,<br>47:10, 57:24,<br>60:2, 60:21,<br>61:24, 75:16<br>**ordered**<br>78:22<br>**ortiz**<br>2:9, 19:23,<br>27:5, 27:9,<br>28:3, 38:21,<br>38:24, 39:4,<br>39:9, 39:12,<br>40:3, 40:10,<br>40:20, 41:4,<br>41:10, 42:1,<br>42:7, 43:23,<br>44:2, 44:3,<br>44:8, 45:6,<br>45:9, 46:8,<br>47:16, 47:19,<br>47:21, 48:24,<br>49:20, 50:21,<br>51:2, 51:6,<br>52:6, 52:17,<br>54:12, 56:9,<br>57:12, 67:10,<br>79:18, 79:21,<br>80:5, 80:14,<br>80:18, 80:23,<br>81:4, 81:7,<br>81:15, 82:1<br>**ortiz's**<br>39:5, 41:16<br>**other**<br>9:4, 9:22,<br>10:1, 11:13,<br>12:19, 21:7,<br>21:17, 21:20,<br>22:6, 23:10,<br>23:13, 23:21,<br>24:11, 24:19,<br>25:9, 25:14,<br>25:17, 25:23, | 26:23, 30:12,<br>34:7, 39:5,<br>42:2, 43:9,<br>56:21, 58:14,<br>65:11, 65:22,<br>65:23, 68:23,<br>69:18, 78:5<br>**otherwise**<br>84:13<br>**out**<br>12:14, 12:16,<br>12:17, 13:18,<br>16:4, 16:8,<br>16:15, 16:20,<br>16:23, 17:12,<br>17:16, 17:19,<br>17:23, 18:6,<br>19:2, 19:13,<br>19:17, 19:19,<br>20:3, 20:10,<br>20:14, 20:16,<br>21:5, 21:10,<br>21:13, 21:15,<br>21:16, 21:18,<br>22:4, 22:9,<br>22:12, 22:15,<br>22:18, 22:21,<br>22:24, 23:2,<br>23:5, 23:14,<br>23:15, 23:18,<br>24:3, 24:8,<br>24:9, 24:11,<br>24:15, 24:18,<br>24:20, 24:22,<br>25:9, 25:13,<br>26:7, 26:10,<br>26:21, 27:2,<br>27:11, 28:1,<br>28:17, 28:18,<br>29:4, 32:6,<br>33:23, 39:22,<br>41:6, 43:6,<br>43:14, 43:24,<br>44:17, 44:24,<br>46:8, 54:24,<br>55:4, 55:7,<br>56:3, 56:18,<br>56:24, 59:5, | 61:10, 62:9,<br>70:18, 70:21,<br>72:12, 72:14,<br>72:21, 73:23,<br>74:4, 74:7,<br>74:10, 74:18,<br>77:11<br>**outcome**<br>84:13<br>**outside**<br>28:9, 28:10,<br>28:15, 40:4,<br>53:19<br>**over**<br>13:21, 28:20,<br>29:7, 29:10,<br>34:24, 50:1,<br>62:21, 63:13<br>**own**<br>35:19, 42:19,<br>59:20, 65:11<br>    **P**<br>**packet**<br>57:19, 57:23,<br>60:1, 60:18,<br>62:14, 75:15<br>**page**<br>1:13, 2:1, 6:2,<br>6:10, 54:19,<br>54:21, 55:15,<br>57:22, 58:9,<br>58:10, 59:24,<br>60:18, 60:19,<br>62:13, 63:12,<br>68:8, 68:10,<br>68:11, 68:13,<br>68:15, 68:19,<br>72:23, 73:13,<br>75:15, 78:14<br>**pages**<br>1:23<br>**paper**<br>57:7, 74:5<br>**paragraph**<br>78:19<br>**park**<br>10:19 | **part**<br>11:23, 14:5,<br>41:12, 46:13,<br>60:17, 73:23,<br>74:19<br>**particular**<br>12:2, 61:5<br>**parties**<br>84:11<br>**past**<br>70:19, 72:15<br>**pending**<br>8:16<br>**percent**<br>20:17<br>**period**<br>16:3, 22:14,<br>48:19, 48:22,<br>51:4<br>**person**<br>15:4<br>**personal**<br>19:3<br>**pertains**<br>58:21<br>**phone**<br>32:1, 32:21,<br>33:8, 39:17<br>**phrase**<br>79:8<br>**physical**<br>71:11, 71:15,<br>71:16, 71:22,<br>72:8, 72:16,<br>72:17, 81:10<br>**picture**<br>46:8<br>**piece**<br>66:22<br>**pietrzyk**<br>1:24, 3:13,<br>84:3<br>**place**<br>31:16, 32:11,<br>52:3<br>**placed**<br>29:16, 30:5,<br>30:14, 30:22, |

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

34

| | | | |
|---|---|---|---|
| 30:24, 31:4,<br>31:18, 39:19,<br>40:2, 49:24,<br>50:15, 76:16<br>**placing**<br>50:10, 51:5<br>**plaintiff**<br>1:6, 4:3<br>**planned**<br>43:1<br>**played**<br>43:6<br>**please**<br>7:9, 8:9<br>**point**<br>37:1, 37:5,<br>39:16, 40:6,<br>40:16, 41:20,<br>41:24, 44:21,<br>44:23, 46:10,<br>49:4, 52:6,<br>54:11, 80:4,<br>80:24<br>**policies**<br>17:15<br>**policy**<br>9:6, 14:2,<br>14:4, 16:7,<br>16:10, 17:22,<br>19:1, 25:8,<br>25:21, 56:24,<br>57:6, 57:10,<br>57:15, 58:18,<br>58:22, 59:1,<br>59:6, 59:18,<br>59:22, 60:15,<br>61:9, 61:12,<br>75:20<br>**portion**<br>55:15, 74:17,<br>75:1<br>**position**<br>9:11, 9:22,<br>10:8<br>**possible**<br>7:20, 27:21,<br>51:8, 52:9,<br>52:11 | **possibly**<br>19:10<br>**potential**<br>70:14<br>**practice**<br>15:19, 19:1,<br>19:3, 19:6<br>**precise**<br>61:5, 61:18<br>**preparation**<br>8:21<br>**present**<br>40:4, 53:18,<br>53:19, 54:8<br>**presented**<br>15:21, 42:22<br>**pressure**<br>68:22, 69:3<br>**pretty**<br>12:21, 13:8,<br>13:20, 16:13,<br>53:15<br>**prevent**<br>76:10, 82:1,<br>82:6<br>**previous**<br>2:1, 9:21,<br>10:3, 10:16,<br>20:2, 20:15,<br>21:5, 26:7,<br>29:8, 58:6<br>**printed**<br>65:10<br>**prior**<br>31:17, 34:17,<br>34:20, 52:2,<br>55:6, 64:7,<br>80:22<br>**prison**<br>10:1<br>**probably**<br>24:22, 63:19,<br>76:20<br>**problem**<br>82:23<br>**procedures**<br>60:4<br>**process**<br>20:18, 29:3, | 29:6<br>**professional**<br>2:20, 3:15<br>**program**<br>18:2, 18:3,<br>18:4, 18:10,<br>76:2, 76:5,<br>76:15, 76:17,<br>77:23, 78:3<br>**promise**<br>82:9<br>**prompted**<br>71:20<br>**pronounce**<br>52:24<br>**proper**<br>75:23<br>**properly**<br>19:13<br>**protocol**<br>53:15, 78:11<br>**provide**<br>39:4, 51:15<br>**provided**<br>66:10<br>**psychological**<br>78:10<br>**public**<br>3:15, 84:1<br>**punched**<br>38:24<br>**purpose**<br>16:24, 65:2,<br>82:15<br>**pursuant**<br>3:13<br>**put**<br>15:4, 18:1,<br>18:9, 18:11,<br>29:20, 30:1,<br>33:9, 40:7,<br>41:1, 41:13,<br>45:16, 55:19,<br>55:23, 56:15,<br>57:11, 67:8,<br>72:21, 77:22<br>**Q**<br>**quarantine**<br>31:18, 32:12, | 55:21<br>**question**<br>7:23, 8:2,<br>8:12, 8:16,<br>17:5, 23:15,<br>63:18, 63:19,<br>67:14, 70:17,<br>79:6<br>**questions**<br>7:21, 8:9,<br>28:5, 34:17,<br>35:8, 36:7,<br>55:14, 67:21,<br>68:9, 75:22,<br>78:6<br>**quickly**<br>7:19<br>**R**<br>**r-a-m-o-s**<br>7:12<br>**r-o-d-r-i-g-o**<br>7:11<br>**radio**<br>29:10, 50:2,<br>50:4, 50:9<br>**radioed**<br>51:11<br>**ramos**<br>1:15, 2:10,<br>3:1, 6:2, 7:4,<br>7:11, 7:13,<br>73:3, 78:21<br>**ramp**<br>10:9, 10:11<br>**rather**<br>8:3, 8:6,<br>42:11, 42:20<br>**read**<br>58:24, 59:7,<br>59:21, 59:22,<br>76:7, 80:2<br>**reading**<br>84:9<br>**reads**<br>60:19, 61:23<br>**really**<br>36:20, 49:11 |

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

35

reason
8:11, 62:24,
68:3
recall
11:10, 26:11,
27:4, 27:15,
27:17, 27:20,
30:2, 30:23,
31:3, 33:1,
35:9, 35:10,
35:16, 35:19,
36:9, 36:10,
37:20, 37:24,
38:2, 38:3,
40:22, 40:23,
41:2, 44:3,
44:5, 44:6,
44:10, 44:12,
44:13, 44:16,
44:20, 47:23,
47:24, 48:2,
48:7, 48:15,
48:18, 48:19,
48:21, 48:24,
49:3, 50:18,
50:21, 51:4,
51:7, 51:11,
52:8, 52:14,
52:15, 53:4,
53:8, 53:13,
53:16, 62:21,
62:23, 64:5,
64:8, 64:15,
64:17, 64:18,
64:20, 64:21,
65:9, 66:2,
66:17, 67:13,
67:16, 67:21,
67:24, 71:6,
71:7, 71:8,
72:18, 72:19,
74:14
receive
29:12, 53:14
received
18:20, 25:11,
25:16, 46:21,
64:20, 65:10,

65:13, 66:1
receiving
70:7
recertify
12:14, 12:18
recollection
36:15, 53:12,
54:7
recommended
78:3
record
7:10, 62:15,
76:22, 82:24,
84:6
recorded
33:5
reduced
84:8
refuse
40:13, 40:14,
40:21, 41:9
refusing
15:12, 32:8,
38:19, 52:3
registered
3:14
regular
12:5
relate
69:17
related
9:1, 72:24,
73:15, 84:11
relates
66:22
relation
27:17, 35:11,
36:11, 36:16,
54:24, 59:10,
61:11, 62:9,
65:11, 68:16,
75:16
relax
31:23
relayed
79:13
release
78:22

remember
12:9, 12:10,
24:23, 25:3,
27:22, 27:23,
31:14, 33:14,
36:13, 36:20,
40:9, 41:7,
41:8, 44:22,
48:9, 48:11,
51:9, 53:6,
53:15, 76:19
repeat
17:5, 59:4
rephrase
8:12, 79:7
report
8:24, 9:1,
13:8, 13:11,
13:13, 16:5,
16:17, 17:1,
17:8, 19:2,
19:13, 19:17,
19:19, 20:3,
20:10, 21:6,
21:10, 21:15,
21:16, 22:5,
22:19, 22:24,
23:19, 24:10,
25:1, 25:13,
26:11, 26:21,
27:3, 27:5,
27:7, 27:12,
28:1, 33:23,
35:23, 38:16,
56:14, 56:17,
56:19, 58:20,
59:9, 59:21,
61:10, 61:19,
61:20, 62:3,
62:8, 64:7,
64:8, 64:9,
64:15, 64:18,
68:8, 72:20,
72:24, 73:15,
73:21, 74:2,
74:10, 74:12,
74:13, 74:14,
74:15, 74:23,

75:3
reported
1:24, 61:3,
66:5
reporter
3:14, 3:15,
7:23, 8:4, 83:2
reporter-notary
84:1
reporting
57:24, 58:10,
60:3, 73:3,
73:4, 73:18,
75:10
reports
20:13, 21:18,
22:10, 22:13,
22:15, 23:2,
23:10, 23:20,
25:9, 26:8,
57:6, 60:20,
71:8, 77:5,
77:6, 77:11,
77:12
request
20:21, 20:24,
21:3
requested
84:10
require
16:16, 59:2,
59:8
required
25:12, 25:13,
25:17, 57:11
requirement
12:12, 14:7,
16:18
requires
25:8, 25:22
resistance
54:23, 60:2,
70:22, 80:8
resister
69:1, 69:9
respond
15:16, 15:20
response
54:23, 60:2,

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

36

| | | | |
|---|---|---|---|
| 67:13, 70:21<br>**response-to-use--**<br>**of-force**<br>68:16<br>**responses**<br>67:24<br>**responsibility**<br>41:13, 41:20,<br>41:23<br>**restraint**<br>60:24<br>**retained**<br>6:9, 54:16,<br>57:21<br>**review**<br>2:21, 8:20,<br>8:23, 9:6,<br>12:20, 13:4,<br>13:12, 14:4,<br>19:18, 20:2,<br>20:5, 21:6,<br>21:9, 33:20,<br>34:1, 34:7,<br>34:22, 35:12,<br>48:6, 55:6,<br>55:10, 55:11,<br>55:16, 65:7,<br>66:2<br>**reviewed**<br>20:15, 21:4,<br>26:7, 33:18,<br>34:11, 34:14,<br>35:2, 36:8,<br>36:14, 37:4,<br>37:5, 37:9, 48:3<br>**reviewing**<br>21:11, 23:1,<br>34:17, 34:20,<br>35:5<br>**right**<br>21:11, 31:24,<br>39:23, 48:9,<br>53:2, 63:7,<br>64:1, 65:5,<br>65:20, 68:12,<br>69:6, 69:7,<br>71:12, 73:6<br>**risk**<br>71:9 | **rodrigo**<br>1:15, 2:9, 3:1,<br>6:2, 7:4, 7:11<br>**room**<br>22:1, 26:23,<br>27:9, 34:10<br>**rooms**<br>67:7<br>**rpr**<br>1:24, 84:3<br>**rules**<br>7:19<br>━━━━━━ **S** ━━━━━━<br>**said**<br>15:23, 18:24,<br>19:4, 29:3,<br>32:10, 32:17,<br>32:22, 33:15,<br>40:6, 41:4,<br>44:4, 44:16,<br>44:20, 45:21,<br>48:15, 48:24,<br>50:18, 50:21,<br>51:6, 53:7,<br>63:20, 70:18,<br>72:12, 77:15,<br>77:16, 84:7<br>**saith**<br>83:4<br>**same**<br>8:1, 21:18,<br>22:6, 24:12,<br>27:3, 27:5,<br>27:7, 36:22,<br>42:23, 43:11,<br>46:17, 46:23,<br>59:13, 60:1,<br>63:12, 72:23,<br>80:19, 81:23,<br>82:4, 82:8,<br>82:13<br>**sat**<br>49:17, 49:24,<br>50:15<br>**saw**<br>35:15, 59:14,<br>63:13, 63:15, | 63:20<br>**say**<br>10:10, 11:4,<br>15:3, 15:7,<br>15:15, 18:6,<br>18:8, 20:15,<br>24:13, 26:16,<br>40:5, 40:10,<br>42:7, 42:10,<br>42:18, 43:4,<br>43:10, 43:13,<br>43:16, 43:19,<br>48:11, 48:13,<br>49:13, 49:19,<br>50:16, 50:24,<br>51:2, 51:14,<br>51:21, 52:12,<br>53:1, 57:3,<br>63:13, 66:12,<br>72:1, 79:19,<br>80:14<br>**saying**<br>8:3, 8:5, 44:6,<br>48:21, 53:4,<br>57:10, 63:14,<br>65:22<br>**says**<br>60:20, 61:17,<br>66:10, 73:3,<br>78:21<br>**scene**<br>47:15, 51:12,<br>51:18, 53:5,<br>53:11, 54:8,<br>69:18<br>**school**<br>10:18, 10:20,<br>10:24<br>**seal**<br>84:16<br>**second**<br>26:15, 26:16,<br>27:24, 57:18,<br>69:9, 73:9,<br>75:14, 78:18<br>**second-last**<br>78:21<br>**seconds**<br>49:13, 51:13, | 51:14, 51:15<br>**secure**<br>45:7, 45:9<br>**securing**<br>45:10<br>**see**<br>20:8, 20:9,<br>34:4, 47:21,<br>57:9, 58:9,<br>58:16, 61:6,<br>61:8, 62:20,<br>63:22, 67:8,<br>69:12, 69:23,<br>71:10, 75:1,<br>75:18<br>**seen**<br>38:6, 39:10,<br>62:18, 64:7,<br>64:8, 64:9,<br>75:20<br>**semester**<br>11:9, 11:10<br>**sense**<br>8:11, 8:18,<br>79:10<br>**sent**<br>78:9<br>**sentence**<br>60:19, 78:21,<br>79:4, 79:9, 80:2<br>**separate**<br>25:9, 25:13,<br>74:11<br>**september**<br>14:16, 60:9<br>**sergeant**<br>20:22, 21:1,<br>31:23, 32:9,<br>40:14, 40:18,<br>41:20, 41:21,<br>42:3, 42:6,<br>42:8, 42:11,<br>42:20, 43:2,<br>43:7, 43:21,<br>45:2, 46:11,<br>50:1, 50:3,<br>50:9, 51:12,<br>51:18, 51:19, |

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

37

| | | | |
|---|---|---|---|
| 51:21, 51:22, 52:5, 52:20, 53:4, 53:10, 53:16, 53:20, 74:1, 74:22, 74:23, 75:8, 75:12 | 27:21, 30:20, 30:22, 31:8, 35:16, 44:13, 45:5, 45:24, 48:7, 54:6, 58:20, 61:9, 62:7, 66:2, 66:7, 67:17, 71:19, 78:1 | 52:12, 59:4, 61:15, 63:18, 63:21, 68:9, 68:12, 69:1, 69:10, 71:12, 73:10, 76:6, 76:20, 77:8, 79:4 | 59:16, 78:22, 79:14 |

service
10:9, 10:11
set
84:15
sheriff
1:8
sheriff's
2:22, 57:23, 60:1, 60:2, 75:16
shirt
31:22
shorthand
3:14, 84:1
shortly
37:21
should
13:17, 41:21, 61:23
show
15:11, 15:13, 20:22, 21:1, 46:1
showed
63:3, 64:18
showing
13:8
shown
62:24, 64:3, 64:15
sign
14:7
signature-zrgpe
84:21
signing
84:9
similar
23:20
since
37:5, 37:9
sit
24:23, 25:7,

sites
58:14
sitting
50:10, 51:5
situation
15:9, 15:10, 15:14, 17:9, 20:7, 35:1, 38:14, 42:19, 42:21, 51:22, 52:2, 76:12
situations
15:1
slam
81:7
some
8:11, 28:5, 40:24, 55:14, 72:5, 75:22, 80:7
somebody
56:16, 73:24, 74:21
someone
8:5
something
26:18, 33:9, 41:4, 52:16, 53:7, 66:4, 74:18
somewhere
21:23
soon
19:9
sorry
10:10, 11:6, 14:13, 17:4, 18:5, 18:11, 45:6, 49:19,

sort
72:5
space
23:7, 23:11, 23:12
speak
25:17, 25:23, 31:22, 32:9, 40:14, 40:17, 41:19, 51:19
speaking
53:11
special
22:1
specific
29:1, 60:21, 61:24
speculation
42:15, 46:18, 71:1
spell
7:9
spoke
33:1
stand
31:24
standard
19:6
start
7:21
started
39:15, 57:5
starting
9:21, 10:3, 54:20, 57:22
state
3:16, 7:9
state's
4:13
stated
38:16, 59:14,

statement
35:13, 40:23, 52:1, 63:8, 63:15, 63:17, 63:23, 63:24, 64:1, 64:3, 64:22, 66:4, 66:8, 66:9, 66:19, 67:9, 68:4, 74:19, 75:3, 82:14
statements
35:10, 36:10, 65:10, 67:7
states
1:1, 58:4, 61:19
stating
31:21, 63:8
stenographically
84:7
stepped
28:17, 28:18, 31:24, 32:6, 32:17, 32:19
steps
13:10, 15:1, 15:3
stick
52:19
still
45:2
stomach
45:13, 45:14, 46:5, 46:12, 70:10
street
4:6, 4:15
strike
25:5, 39:12, 47:2, 47:5, 47:9, 47:15, 68:22, 69:3, 80:6, 80:15, 80:23, 81:11
striking
47:13, 47:19,

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

38

52:17, 80:18
**strong**
71:24, 72:1
**struck**
39:9, 52:6,
56:9, 57:12,
80:5, 81:5
**struggle**
45:19, 70:5
**struggling**
46:1
**study**
12:1
**stun**
68:22, 69:4
**subdue**
80:21, 81:1
**subject**
71:11, 71:15,
71:16, 71:23,
72:9, 72:17,
72:18
**subjective**
72:5
**successfully**
80:12, 80:16
**suite**
5:7
**superintendent**
34:4, 34:5,
34:10, 34:16,
35:3, 35:6,
35:22, 36:15,
36:16, 37:1,
37:6, 37:10
**superintendent's**
34:13
**supposed**
16:8, 16:15,
16:19, 29:20,
30:1, 30:5,
30:13, 30:22,
56:24
**sure**
14:6, 17:6,
23:20, 24:11,
27:11, 30:15,
42:24, 49:14,

52:15, 59:5,
62:6, 63:11,
66:3, 66:6,
72:22
**sustained**
77:1
**sworn**
7:2, 7:6
**system**
30:15

---
**T**
---

**tactics**
12:21, 14:22
**take**
8:15, 8:16,
13:10, 15:1,
15:3, 16:12,
42:12, 42:21,
46:7, 54:21,
81:10
**takedown**
68:23, 69:4
**taken**
38:22, 39:3,
53:13, 53:23,
56:21, 61:5,
61:19, 69:17,
75:2, 84:4, 84:7
**taking**
13:23
**talked**
38:5, 46:9
**tapia**
1:12, 2:2
**taught**
15:15
**tell**
30:17, 34:22,
38:15, 39:1,
71:19
**telling**
39:2
**terms**
59:3, 59:19,
60:21, 61:24,
70:1
**testified**
7:6, 15:23,

20:14, 27:14,
30:3, 43:17,
43:20, 44:3,
44:7, 74:16,
80:4, 80:7
**testimony**
39:18, 45:24,
46:4, 47:18,
50:8, 55:3,
55:9, 56:18,
58:19, 61:9,
62:7, 66:8,
70:9, 70:12,
74:21, 75:2,
84:6, 84:7
**th**
58:2, 66:10,
84:16
**thank**
7:13, 62:14,
78:6, 82:21
**thanks**
82:18
**thereafter**
84:8
**thing**
20:20, 29:9
**things**
30:16
**think**
15:23, 18:19,
41:3, 64:20,
75:23
**thought**
18:24, 74:16,
77:15, 77:16
**threat**
15:20, 69:21,
70:7, 70:14,
70:23, 82:9
**threats**
15:17
**three**
27:1, 27:2,
30:16, 49:21
**threw**
17:4, 45:8,
46:14

**through**
7:18, 7:19,
11:17, 11:19,
13:7, 13:10,
29:2, 31:12,
35:14
**thrown**
46:11
**tick**
70:3
**ticked**
71:14
**tier**
28:9, 28:10,
28:14, 28:15,
28:16, 29:4,
31:6, 31:10,
31:21, 32:2,
32:19, 32:20,
33:16, 39:17,
39:22, 40:4,
43:14, 43:24,
44:18, 53:20,
54:3, 54:5
**tiffany**
1:24, 3:13,
84:3
**time**
7:16, 8:14,
14:10, 16:21,
20:17, 21:18,
22:14, 27:3,
27:5, 27:7,
31:5, 32:8,
34:8, 37:5,
37:20, 43:3,
43:4, 48:19,
49:11, 50:3,
51:4, 53:16,
54:2, 57:16,
63:1, 63:23,
64:1, 74:2,
80:11, 80:15,
80:18, 80:19,
80:24, 82:21
**timely**
82:11, 82:16
**times**
16:4, 16:6,

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

39

| | | | |
|---|---|---|---|
| 20:15, 23:18, 24:9, 47:21, 47:23 | transcript 84:5 | uic 11:3, 11:6, 12:1, 12:8 | 22:5, 22:19, 22:24, 23:2, 23:10, 23:19, |
| today 8:21, 24:23, 25:7, 27:21, 30:20, 30:22, 31:8, 35:16, 44:13, 45:5, 45:24, 48:7, 54:6, 58:20, 61:9, 62:8, 64:7, 66:2, 66:7, 67:17, 71:19, 78:2 | transportation 29:3 transported 28:20 transporting 29:5, 30:4 trenton 11:4 triton 11:3, 11:5, 11:8, 12:4, 12:8 true 80:5, 80:9, 80:12, 80:21, 84:6 | under 31:18, 32:12, 51:16, 51:17, 55:20, 57:10, 69:1, 69:20, 71:9, 73:3, 73:18, 84:8 understand 8:5, 8:8, 16:15 understanding 11:16, 17:6, 17:8, 56:23, 57:15, 58:24, 59:1, 59:6, | 24:10, 25:1, 25:9, 25:13, 25:18, 25:23, 25:24, 26:8, 26:11, 33:23, 35:23, 46:20, 56:14, 56:19, 58:20, 59:9, 60:13, 61:10, 62:3, 62:8, 68:8, 71:5, 72:20, 74:12, |
| told 29:21, 31:13, 31:15, 31:16, 31:23, 35:17, 40:12, 40:20, 40:24, 41:9, 67:9 | try 8:12, 19:7 trying 41:6, 59:5, 70:5, 80:24 | 59:8, 59:17, 62:2, 76:4, 76:9 united 1:1 unknown 2:12, 2:17, | 74:13, 75:3, 75:17, 76:9, 76:21, 77:5, 77:11, 77:12, 77:19, 78:2 using 22:9 |
| took 42:1, 49:12, 56:15, 56:20, 57:9, 61:20, 61:21 | turn 58:9, 59:24, 60:18, 62:13, 78:14 | 2:19 until 46:10 use 8:6, 13:14, | V |
| top 45:9, 54:18, 60:19, 69:3 | turned 56:3 two 11:14, 53:21, | 14:2, 18:3, 46:13, 54:23, 59:10, 60:2, | vague 79:5 valley 11:15 verbal |
| towards 39:5 | 54:1, 58:12, 68:20, 69:2, 69:3, 71:21 | 60:23, 62:11, 70:22, 75:23, 76:24, 77:6, | 8:2 verified 32:3 |
| track 39:14 trained 60:15 | type 61:4, 61:17, 74:20 | 78:23, 79:8, 79:14, 79:17 use-of-force | verify 32:1, 67:6 version |
| training 12:12, 12:13, 12:19, 13:6, 13:13, 13:18, 14:5, 14:8, 14:11, 14:14, 14:17, 14:22, 15:19, 25:11, 25:16, 46:21, 60:13 | typed 74:8, 83:2 types 16:16 typewriting 84:8 | 6:11, 8:24, 12:20, 13:4, 13:13, 16:5, 16:17, 17:1, 17:8, 18:10, 18:15, 18:21, 19:2, 19:13, 19:17, 20:3, | 24:5, 36:2 video 19:18, 19:24, 20:2, 20:6, 20:8, 20:9, 20:15, 20:20, 20:23, 21:2, 21:5, 21:6, 21:10, 21:11, |
| trainings 60:16 | U | 20:10, 20:13, 21:6, 21:10, 21:15, 21:16, | 21:14, 21:23, 23:1, 26:7, 33:18, 33:20, 34:1, 34:4, |
| | uh-huh 8:3, 21:24, 60:14, 68:18 uh-uh 67:3 | | |

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

40

34:7, 34:11,
34:17, 34:20,
34:23, 34:24,
35:1, 35:2,
35:5, 35:12,
35:14, 35:17,
36:8, 36:12,
36:14, 36:17,
36:24, 37:4,
37:8, 37:12,
37:18, 38:1,
38:6, 38:12,
39:10, 45:21,
46:1, 48:3,
48:6, 48:9,
55:6, 55:10,
55:12
**video-recorded**
53:17
**view**
20:19
**viewed**
35:1, 36:12,
45:21
**vincenzo**
4:4
**violation**
17:15, 17:22

**W**

**waived**
83:1
**walk**
29:2
**walked**
45:10
**wall**
49:17, 49:24,
50:11, 50:13,
50:14, 50:16,
51:6
**want**
19:3, 28:5,
31:21, 38:11,
39:14, 45:3,
54:22, 55:16,
63:11, 64:6
**wanted**
20:9, 31:22,

32:8, 34:22,
38:13
**wants**
45:2
**washington**
4:15
**watch**
21:23, 22:3,
22:5, 23:5
**watched**
21:14
**watching**
21:15
**way**
7:23, 8:1, 8:4,
14:8, 19:12,
19:15, 29:8,
30:8, 30:12,
36:3, 40:24,
42:2, 43:6,
47:2, 47:6,
47:9, 49:5,
52:7, 68:5,
72:3, 74:23,
76:6, 80:1,
81:10
**ways**
15:16, 15:20,
30:3, 30:20,
30:23
**we'll**
25:6
**we're**
21:20, 22:9,
63:11
**we've**
46:9
**wednesday**
1:17
**week**
12:16, 12:17,
13:1
**weekly**
12:13, 12:15
**went**
39:16, 45:6,
45:8, 45:9,
45:12, 45:15,

45:18, 46:5,
49:10, 52:4,
54:5, 70:9
**west**
4:15, 5:6,
26:15, 26:16,
28:1
**whatever**
54:2
**whatsoever**
34:20, 35:11,
38:4
**whenever**
16:11
**whereof**
84:15
**whereupon**
7:3
**wherever**
23:7, 23:11,
23:12
**whether**
11:22, 36:5,
39:9, 41:21,
47:24, 51:6,
52:14, 66:15
**white**
31:22
**whole**
13:1, 52:2
**within**
19:7, 28:7,
51:13, 51:14,
58:14
**without**
43:9, 47:13
**witness**
7:2, 7:5,
39:11, 52:21,
69:6, 69:8,
73:6, 73:10,
82:23, 83:1,
84:15
**witnessed**
47:5, 47:18,
55:10, 57:14,
59:3, 59:10,
67:10

**wondering**
72:4, 76:1
**word**
79:1, 79:17,
79:20
**words**
8:6, 40:22,
41:8, 44:10,
53:6
**work**
29:6
**worked**
10:1
**works**
29:3
**wouldn't**
17:24, 22:7,
24:18
**write**
23:7
**writing**
13:9, 13:11,
23:9, 27:5,
27:6, 74:14
**written**
14:1, 14:4,
59:18, 60:20,
61:8, 61:23,
63:16, 64:12,
64:16, 68:4,
74:23
**wrong**
73:11
**wrote**
74:14

**Y**

**yeah**
13:16, 15:5,
16:22, 21:22,
22:3, 32:24,
38:5, 48:12,
54:5, 79:7
**year**
10:22, 11:10,
12:16, 12:17,
12:22, 14:8,
14:12, 14:15,

Transcript of Rodrigo Ramos
Conducted on March 22, 2017

41

14:16, 62:21,
63:13
**years**
9:15, 9:19,
10:13, 10:14,
11:6, 15:24,
17:7, 18:13,
77:20
**yesterday**
52:22
**young**
71:24
**yourself**
18:8, 27:6,
61:21, 76:15

---

**0**

**0001**
54:20
**03**
1:18

---

**1**

**13**
84:16
**135**
62:13, 62:16,
62:17, 78:15
**139309**
1:22
**14**
75:15
**16**
1:12, 10:13,
10:14
**17**
19:22, 22:17,
26:5, 28:6,
29:23
**1750**
5:7
**19**
66:10, 67:19

---

**2**

**2**
1:18
**2-a**
28:9, 28:10,

**28:15, 54:3**
**20**
54:21, 68:9,
68:10, 68:13
**2011**
58:3, 59:1,
59:6, 60:7,
60:10
**2014**
19:22, 22:17,
26:5, 28:6,
29:23
**2015**
14:12, 66:11,
67:19
**2016**
14:12
**2017**
1:17, 84:17
**204**
59:24
**21**
54:21, 55:15,
68:8, 68:9
**211**
60:18
**22**
1:17, 68:8
**24**
16:23, 19:1
**243**
3:7, 4:9

---

**3**

**30**
16:6, 19:4,
19:7, 20:13,
23:18, 51:15,
58:2, 70:18,
76:24
**311**
3:5, 4:6
**312**
3:7, 4:9, 4:17,
5:9
**32**
11:21
**34**
72:23, 73:13

**3rd**
3:5, 4:7

---

**4**

**40**
16:6, 19:4,
20:13, 23:18,
70:18, 76:24
**41**
71:9

---

**5**

**50**
4:15
**500**
4:14
**5012**
1:12
**53**
5:6
**54**
6:11
**57**
6:12
**583**
5:9
**5900**
3:7, 4:9
**5967**
4:17

---

**6**

**60**
51:15
**603**
4:17
**60602**
4:16
**60604**
5:8
**60607**
3:6, 4:8

---

**7**

**78**
6:5

---

**8**

**80**
20:17

**84**
1:23

---

**9**

**94**
10:23, 11:7
**95**
11:7, 11:12
**9500**
5:9